## COLEMAN–GILBERT ASSOCIATES v. COMMISSIONER OF INTERNAL REVENUE (two cases).

### Nos. 2975, 2976.

Circuit Court of Appeals, First Circuit.

Feb. 27, 1935.

Ralph E. Tibbetts, of Boston, Mass., for petitioners.

Arnold Raum, Sp. Asst. to Atty. Gen. (Frank J. Wideman, Asst. Atty. Gen., and Sewall Key, Sp. Asst. to Atty. Gen., on the brief), for Commissioner of Internal Revenue.

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

WILSON, Circuit Judge.

These are petitions for review of decisions of the Board of Tax Appeals under sections 1002, 1003 of the 1926 Revenue Act, 26 USCA §§ 1225, 1226, and section 1001, as amended by section 603 of the 1928 Act, 26 USCA § 1224, and section 1101 (a) of the Revenue Act of 1932 (26 USCA § 1224 (a). The petition in No. 2975 involves income taxes for the years 1927 and 1928, and the petition in No. 2976 involves income taxes for the year 1929. The same question is involved in both cases and may be disposed of in one opinion.

The question to be determined is whether the trust known as Coleman-Gilbert Asso-

ciates for the years in question is taxable as a corporation.

By a declaration of trust executed on November 8, 1926, Harry Coleman, Pauline Coleman, Bernard Gilbert, Harris Levine, and Lena Levine provided that certain real estate situated in the city of Boston and its suburbs should, for a period of fifteen years, be held by them in trust, under the name Coleman-Gilbert Associates.

It is agreed by the parties hereto that the property in question, consisting of some twenty apartment houses in the city of Boston and its suburbs, had originally been owned by Messrs. Gilbert, Coleman, and Levine in common, each owning a one-third interest; that prior to November 6, 1926, Coleman and Levine had each transferred one-half of his interest in this property to his wife, so that, at the time of the declaration of trust, Harry Coleman owned one-sixth interest in the property; his wife, Pauline Coleman, one-sixth; Harris Levine, one-sixth; his wife, Lena Levine, one-sixth; and Bernard Gilbert, one-third. That for the years 1927, 1928, and 1929 the petitioner filed returns with the federal government as a fiduciary on Form 1041 reflecting the following incomes: For the year 1927, $81,-302.11; for the year 1928, $77,730.53; and for the year 1929, $23,376.23—each beneficiary in each year filing a return for his or her share of the income distributed under the trust agreement.

It is further agreed that altogether there are about 1,500 tenants in the apartment houses, and the gross annual rentals amount to approximately $420,000; that the operating expenses are over $300,000 a year; that two of the male trustees devote their entire time to the management and operation of the trust properties, and a third trustee, Mr. Levine, is also actively engaged in taking care of a part of the management duties, but so far the female trustees have been entirely inactive in the management of the trust property; that the trustees draw no salary; that the male trustees have superintended the maintenance of the trust properties, including the collection of the rents, the making of repairs, the purchasing of supplies, the borrowing of money when necessary, the paying of all bills, and supervising the office details involved in the operation of these properties; that no part of the management work, collection of income, has been performed by "agents" as that term is generally understood, except in so far as strictly supervised employees on a weekly salary might be considered agents. The only other property in the trust estate are 300 shares of the Shawmut Associates, a subsidiary of the National Shawmut Bank, which were bought at the instance of the National Shawmut Bank, which has a mortgage on the property of the trust.

Bernard Gilbert testified before the Board without contradiction that, for more than twenty years, he, together with Mr. Coleman and Mr. Levine, had been interested in this real estate, which is now included in the Coleman-Gilbert Associates trust; that prior to 1926 the property had been operated under the name of Coleman & Gilbert, and that he had been the most active of the co-owners in the handling of the property prior to the formation of the Coleman-Gilbert Associates; that there was no change in the method of handling the properties after Coleman-Gilbert Associates was formed, except as hereafter appears, and no change in the books; that there were never any meetings of the trustees, and no records of their proceedings kept; that there were no shares or certificates of the trust issued at any time; and of course no meetings of shareholders as such were ever held; that *the purpose of forming Coleman-Gilbert Associates was to avoid a partition of the property by some of the heirs in case of the death of any of the owners of the property, and, in any event, was to terminate in fifteen years;* that the power to purchase other property was inserted in the trust instrument simply to protect the holdings that the trust had; but this power and certain other broad powers vested in the trustees had never been exercised.

Congress has not undertaken to lay down any tests for determining whether an organization is an association within the meaning of section 2 (a) (2) of the Revenue Act of 1926, 26 USCA § 1262 (a) (2), and section 701 (a) (2) of the Revenue Act of 1928, 26 USCA § 2701 (a) (2), and taxable as a corporation. It has merely said by way of definition that corporations "include associations, joint-stock companies and insurance companies."

It was left for the courts or the Treasury Department by Regulations to determine what organizations are included within the term "associations." As yet the Supreme Court has not laid down any absolute test. Two cases only have come before it in which the taxing of trusts as associations was involved: Crocker et al., Trustees v. Malley, 249 U. S. 223, 39 S. Ct. 270, 63 L. Ed. 573,

2 A. L. R. 1601; Hecht et al., Trustees v. Malley, 265 U. S. 144, 44 S. Ct. 462, 68 L. Ed. 949.

In the former case, decided in 1919, the court, in deciding that the trust was not an association, laid stress on two points: (1) That the purpose of the trust was to liquidate a business, and (2) that the beneficiaries had no control over the trustees.

In the case of Hecht et al., Trustees v. Malley, the court said (page 157 of 265 U. S., 44 S. Ct. 462, 467):

"The word 'association' appears to be used in the Act in its ordinary meaning. It has been defined as a term 'used throughout the United States to signify a body of persons united without a charter, but upon the methods and forms used by incorporated bodies for the prosecution of some common enterprise.' 1 Abb. Law Dict. 101 (1879); 1 Bouv. Law Dict. (Rawle's 3d Rev.) 269; 3 Am. & Eng. Enc. Law (2d Ed.) 162; and Allen v. Stevens, 33 App. Div. 485, 54 N. Y. S. 8, 23, in which this definition was cited with approval as being in accord with the common understanding. Other definitions are: 'In the United States, as distinguished from a corporation, a body of persons organized, for the prosecution of some purpose, without a charter, but having the general form and mode of procedure of a corporation.'"

In the same case the court said (page 161 of 265 U. S., 44 S. Ct. 462, 468):

"It results that Crocker v. Malley is not an authority for the broad proposition that under an Act imposing an excise tax upon the privilege of carrying on a business, a Massachusetts Trust engaged in the carrying on of business in a quasi-corporate form, in which the trustees have similar or greater powers than the directors in a corporation, is not an 'association' within the meaning of its provisions.

"We conclude, therefore, that when the nature of the three trusts here involved is considered, as the petitioners are not merely trustees for collecting funds and paying them over, but are associated together in much the same manner as the directors in a corporation for the purpose of carrying on business enterprises, the trusts are to be deemed associations within the meaning of the Act of 1918."

This appears to be the last word of the Supreme Court that is helpful in determining what is included in the term "association."

The Treasury Department has endeavored from time to time to clarify the situation by Regulations defining associations and trusts. Under Article 1504 of Regulation 62, it followed what it understood was the holding of the court in Crocker v. Malley, supra, and provided that: "Where trustees hold real estate subject to a lease and collect the rents, doing no business other than distributing the income less taxes and similar expenses to the holders of their receipt certificates, who have no control except the right of filling a vacancy among trustees and of consenting to a modification of the terms of the trust, no association exists. * * * If, however, the cestuis qui trust have a voice in the conduct of the business of the trust, whether through the right periodically to elect trustees or otherwise, the trust is an association. * * *"

In 1926, following the decision in the Hecht v. Malley Case, by Regulation 69, Arts. 1502 and 1504, and again in 1928 by Regulations 74, Arts. 1312 and 1314, it was provided that, in addition to the above tests in Regulation 62, "if, however, the beneficiaries have positive control over the trust, whether through the right periodically to elect trustees or otherwise, an association exists. * * * Even in the absence of control by the beneficiaries where the trustees are not restricted to the mere collection of funds and their payment to the beneficiaries, but are associated together with similar or greater powers than the directors of a corporation for the purpose of carrying some business enterprise, the trust is an association within the meaning of the statute."

There are numerous decisions of the Board of Tax Appeals and Circuit Courts of Appeals in review, without laying down any definite line of demarkation between an association and a pure trust. In some instances the courts have based their decisions on the rule that where the administrative board has construed an ambiguous or indefinite definition in a statute and no change was made in a later act of Congress, it is presumed that Congress had adopted the definition adopted by the administrative board; in other cases the courts have been influenced by other considerations: the limited activities of the trustees, and the purpose of the trust. In any event, the decisions are seemingly in a hopeless state of confusion. Klein's Federal Income Taxation, p. 1139, par. 34:9, and 1933 Suppl., par. 34:9. As the Regulations of the Treasury Department have been modified from time

to time, it may well be questioned whether Congress has intentionally adopted every modification of the Regulations when it makes no change in the language of its acts; or whether it has left it for further construction by the courts, especially if the Regulations have not followed closely the language of the courts. Tyson et al. v. Commissioner (C. C. A.) 68 F.(2d) 584; Trust No. 5833, Security-First Nat. Bank of Los Angeles v. Welch (C. C. A.) 54 F.(2d) 323, 326.

It would serve no useful purpose to attempt to analyze all the cases that have been decided by the Board of Tax Appeals and the Circuit Courts of Appeals involving this question. The lack of a conclusive test will sufficiently appear in the following cases in which the Board of Tax Appeals has been sustained in holding a trust was an association: Willis et al. v. Commissioner (C. C. A.) 58 F.(2d) 121; Smith v. Commissioner (C. C. A.) 69 F.(2d) 911; Little Four Oil & Gas Co. v. Lewellyn (C. C. A.) 35 F.(2d) 149; Trust No. 5833, Security-First Nat. Bank of Los Angeles v. Welch, supra; Sloan et al. v. Commissioner (C. C. A.) 63 F.(2d) 666, 667; Investment Trust of Mutual Investment Co., Empire Trust Co., Trustee v. Commissioner (C. C. A.) 71 F.(2d) 1009; and in the following cases in which the court has either reversed the Board in holding that the trust was an association, or has approved the Board's finding that the trust was not an association: Lansdowne Realty Trust v. Commissioner (C. C. A.) 50 F.(2d) 56; Lucas, Commissioner v. Extension Oil Co. (C. C. A.) 47 F.(2d) 65; Commissioner v. Morriss Realty Co. Trust (C. C. A.) 68 F.(2d) 648; Commissioner v. Pryor & Lockhart Development Co. (C. C. A.) 70 F.(2d) 154, 158; Commissioner v. Kelley et al., Trustees (C. C. A.) 74 F.(2d) 71 (decided Dec. 4, 1934).

From the decisions of the Board of Tax Appeals and the several Circuit Courts of Appeals, it is impossible to mark out any definite pathway to follow in every case. The only conclusion is that each case must depend on its own state of facts.

■ We think, however, it is generally agreed that, in order for a trust to be taxed as a corporation, the trustees must not only be carrying on a business enterprise for profit, but must be doing it in much the same manner and form as directors of a corporation. One other factor also seems to be agreed upon: That it is not what the trustees are authorized to do under the trust instrument, but what they actually are doing. Gardiner v. United States (C. C. A.) 49 F.(2d) 992; Commissioner v. Pryor & Lockhart Development Co., supra.

It also appears that the purpose for which the trust was formed is given weight in determining the nature of the organization. Was it organized solely for the purpose of conducting a business for profit, or merely to collect and distribute income and eventually liquidate the corpus of the trust, Willis et al. v. Commissioner (C. C. A.) 58 F.(2d) 121, 122; Commissioner v. Atherton et al. (C. C. A.) 50 F.(2d) 740; or is it a trust under which the conduct of a business for the benefit of the cestuis qui trustent is incidental to the purpose for which it was created, as in Commissioner v. Kelley et al., supra?

It was held in Commissioner v. Pryor & Lockhart Development Co., supra:

"Where an entity of this kind resembles a corporation in some respects and that of a partnership in others—that frequently being the case—the features of similarity should be compared and the marks of dissimilarity contrasted. The resemblances should be balanced. It should be determined by that method the one to which the enterprise is predominantly akin in the method, mode, and form of procedure in the conduct of its business. If it be a corporation, it falls within that category; if a partnership, it should be placed in that class and should be taxed accordingly. Tyson v. Commissioner, supra. In Lucas, Commissioner, v. Extension Oil Co. (C. C. A.) 47 F.(2d) 65, 67, involving facts similar to those presented here, the court declared the applicable doctrine as follows:

" 'The Board of Tax Appeals in a careful opinion, balancing the resemblances which petitioner in its structure bore to a trust, against those which it bore to a corporation, and considering also the facts as to what the petitioner actually did, found as a fact and concluded as a matter of law that petitioner was not an association within the meaning of the taxing act, "voluntarily organized to transact business under corporate forms and transacting such business." ' "

■ It is true that the Board of Tax Appeals found as facts that, while the trustees in the instant cases did not exercise all the powers given them in the trust instrument, they were, nevertheless, carrying on a business for profit in much the same manner as directors of a corporation are associated together with the purpose of carrying on a

business enterprise; and upon these facts, judged by their activities, the Coleman-Gilbert Associates was an association within the meaning of section 2 (a) (2) of the 1926 Act, 26 USCA § 1262 (a) (2), and section 701 (a) (2) of the 1928 Act, 26 USCA § 2701 (a) (2).

The three active members of the trustees were undoubtedly conducting the management of the trust property with a view to ensuring an income for the beneficiaries of the trust, who were the equitable if not the legal owners of the res; but it does not appear that they exercised any powers that they were not bound to exercise by reason of their ordinary duties as trustees in preserving the properties under a pure trust, viz., keeping them in repair, renting them to the best advantage, and collecting the rentals, and paying operating expenses. In other words, they did nothing that they were not bound to do in their capacity as trustees, if the trust was what may be termed a pure trust, in which the trustees were expressly authorized to borrow money, if necessary, for carrying out the purpose of the trust.

From the activities of the trustees alone we do not think the Board was warranted in holding as a matter of law that the trust was an association. While there may have been sufficient evidence to warrant the Board in finding that they were conducting a business enterprise, and with the purpose of ensuring an income for the beneficiaries during the continuance of the trust, and while they may have exercised powers in some respects as great as those of the directors of a corporation, they did not exercise them in the manner of directors of a corporation. They held no meetings; they kept no records; their acts were not determined by a majority vote. Their tenure as trustees was during life or the duration of the trust, unless they voluntarily resigned. Two trustees were wholly inactive, and a third only active in part in the management. They conducted the business in the same manner that it had been conducted before the trust was formed.

In a case not clearly falling on one side or the other of the line between an association and a trust, we think the Board, in comparing the resemblance of a trust to a corporation, should give due weight to the purpose for which the trust was organized. The uncontradicted evidence in these cases discloses, we think, that the Coleman-Gilbert Association was not organized to conduct a business for profit; that while the trustees did manage the property so that it produced an income for the beneficiaries, it was only incidental to the main purpose for which the trust was created. The purpose of the creators, according to the uncontradicted evidence, was to prevent a partition and division of the property in case one of the owners died within a definite period of time. It was deemed in the interest of the co-owners and their heirs that the properties should be kept intact for a period of fifteen years. There is no evidence to warrant any inference that it was organized in order that it might be better managed, or that any additional financial advantage would accrue from creating a trust. If every trust terminating in five, ten, or fifteen years in which the trust res consisted of rentable real estate is managed faithfully and prudently by the trustees with a view to producing the largest income for the cestuis qui trustent is to be taxed as an association, few strictly pure trusts would escape a double taxation upon its income.

■ The imposition of a double tax upon the income of a trust, viz., a tax, first, on the income of the trust as an entity, and a further tax upon the distributive shares of the beneficiaries, should clearly be warranted under the acts of Congress, and should not have as its basis some remote resemblance to a corporation. If there is doubt, it should be resolved in favor of the taxpayer. Crocker v. Malley, supra, page 233 of 249 U. S., 39 S. Ct. 270; Hecht v. Malley, page 160 of 265 U. S., 44 S. Ct. 462. To warrant a tax as a corporation, we think that not only should the trustees be actively conducting a business chiefly for profit and in the form and manner of directors of a corporation, but where there is doubt, it should not be determined wholly by a resemblance in form, but the nature and purpose of the trust agreement should be considered in determining whether a trust is an association within the intent of Congress. Congress evidently sought to prevent trusts similar to those known as "Massachusetts Trusts," which may be organized for the sole purpose of conducting a business for profit, and have many of the features of a corporation, from avoiding the capital stock tax and corporation income taxes; but we do not think the purpose of Congress in defining a corporation as including associations was to impose a double tax on the income of a trust of limited duration, organized not for the conduct of a business for profit, but to keep the trust res intact in the respective fam-

ilies of the trustees during the period of the trust instrument, the trust property formerly having been owned by the trustees as co-tenants, especially when no change in its management results from that when owned as cotenants.

There is no evidence in this case that the trustees in their management, even if they had the necessary powers, departed from the purpose for which the trust was organized. The conclusion which the Board drew from the stipulated facts and the uncontradicted evidence that Coleman-Gilbert Associates was an association within the meaning of the Revenue Acts of 1926 and 1928, we think, was error.

The decisions of the Board of Tax Appeals are reversed, and the cases are remanded to that Board for further proceedings not inconsistent with this opinion.