SEARS et al. v. HASSETT, Acting Collector
of Internal Revenue, et al.

No. 3574.

Circuit Court of Appeals, First Circuit.

May 23, 1940.

Robert G. Dodge, of Boston, Mass. (W. A. Barrows, of Boston, Mass., on the brief), for appellants.

Warren F. Wattles, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key and Louise Foster, Sp. Assts. to Atty. Gen., and Edmund J. Brandon and C. Keefe Hurley, both of Boston, Mass., on the brief), for appellees.

Before MAGRUDER and MAHONEY, Circuit Judges, and McLELLAN, District Judge.

MAGRUDER, Circuit Judge.

These two cases were consolidated for trial and for purposes of appeal. The first was an action to recover back income taxes for 1935 and 1936, assessed against the F. R. Sears Real Estate Trust as an "association" within the meaning of the Revenue Acts of 1934 and 1936.[1] The second was an action to recover back capital stock taxes for the years ending June 30, 1933, 1934, 1935 and 1936, assessed against the same trust as an association "carrying on or doing business" during those years, within the meaning of the applicable Revenue Acts.[2] Appeals are taken from judgments for the defendants.

Frederick R. Sears died in 1907, leaving various parcels of real estate in Boston, Brookline and Nahant. By his will the residue of the estate was left to his six children. The parcels of real estate were put up for sale and some had been disposed of prior to 1921. At that time five or six parcels remained, including the Studio Building at the corner of Tremont and Bromfield Streets, Boston, as to which an offer was pending from S. S. Kresge Co. to take it on a long-term lease.

On May 16, 1921, the remaining parcels of real estate were conveyed to trustees under a declaration of trust setting up the F. R. Sears Real Estate Trust. Appellants introduced testimony to the effect that the Sears heirs established this real estate trust not for the purpose of engaging in real estate operations as a business but to simplify the holding of the legal title and thus to facilitate the disposition of the remaining parcels, which the heirs desired to get rid of as rapidly as might advantageously be done. The beneficial interests in the property were then split up among five children of Frederick R. Sears, one grandchild and one great-grandchild, and further subdivisions of interest were foreseen as likely to occur. The declaration of trust contained the usual broad powers found in Massachusetts real estate trusts. The trust was to continue until twenty years after the death of the survivor of certain persons named in the trust indenture and transferable receipts representing the beneficial interests were issued. The beneficiaries retained no powers of control except a veto power over amendments to the trust proposed by the trustees.

A few weeks after the creation of the trust the trustees leased the Studio Building to S. S. Kresge Co. for a term of 50 years with an option in the lessee to renew for a further period of 49 years. By 1925 all the remaining parcels of land had been sold and the trustees since then have merely handled the interests of the lessors of the Studio Building.

### The Income Tax.

■■ Under the provisions of law taxing the income of corporations the term "corporation" is defined as including "associations, joint-stock companies and insurance companies". The term "association" is not defined in the Act, but some precision of meaning has been given to it by court decisions. One element is whether the form of organization resembles that of a corporation, with centralized control, continuity of management unaffected by the death of the beneficiaries, transferability of shares and limitation of liability. The trust before us meets these qualifications. Helvering v. Coleman-Gilbert Associates, 296 U.S. 369, 56 S.Ct. 285, 80 L.Ed. 278. But Morrissey v. Commissioner, 296 U.S. 344, 356, 357, 359, 360, 56 S.Ct. 289, 80 L.Ed. 263 makes clear that to be an "association" within the meaning of the Act, the trust must not only resemble a corporation in form of organization; it must also have been created as a joint enterprise for the carrying on of a business and sharing its gains, as distinguished from the mere holding and conserving of particular property, with incidental powers, as in the traditional type of trusts.

■ However, the character of the trust as an association is not determined by the intentions or expectations of its creators,

---

[1] §§ 13 (a) and 801 (a) (2) of the Revenue Act of 1934, 48 Stat. 686, 771, 26 U.S.C.A.Int.Rev.Acts, pages 668, 790; §§ 13 (b) and 1001 (a) (2) of the Revenue Act of 1936, 49 Stat. 1655, 1756, 26 U.S.C.A.Int.Rev.Acts, pages 822, 971.

[2] § 215 (a) (g), National Industrial Recovery Act, 48 Stat. 207, 208, with definitions adopted by reference from § 1111 (a) (2), Revenue Act of 1932, 47 Stat.

289, 26 U.S.C.A.Int.Rev.Acts, page 656; §§ 701 (a) and 801 (a) (2), Revenue Act of 1934, 48 Stat. 769, 771, 26 U.S.C.A. Int.Rev.Acts, pages 787, 790; §§ 105 (a) and 501 (a) (2), Revenue Act of 1935, 49 Stat. 1017, 1027, 26 U.S.C.A.Int.Rev. Acts, pages 796, 811; §§ 401 (a) and 1001 (a) (2), Revenue Act of 1936, 49 Stat. 1733, 1756, 26 U.S.C.A.Int.Rev.Acts, pages 943, 971.

proved by parol, nor by the extent to which the powers in the trust instrument have actually been exercised, but rather by the purposes and potential activities as disclosed on the face of the trust instrument. In the Morrissey case, supra, Chief Justice Hughes said, 296 U.S. at pages 360, 361, 56 S.Ct. at page 296, 80 L.Ed. 263:

"Under the trust, a considerable portion of the property was surveyed and subdivided into lots which were sold and, to facilitate the sales, the subdivided property was improved by the construction of streets, sidewalks, and curbs. *The fact that these sales were made before the beginning of the tax years here in question, and that the remaining property was conveyed to a corporation in exchange for its stock, did not alter the character of the organization. Its character was determined by the terms of the trust instrument.* It was not a liquidating trust; it was still an organization for profit, and the profits were still coming in. *The powers conferred on the trustees continued and could be exercised for such activities as the instrument authorized."* [Italics ours.]

This point was further emphasized in the companion case of Helvering v. Coleman-Gilbert Associates, 296 U.S. 369, 56 S.Ct. 285, 80 L.Ed. 278. There, certain apartment houses were transferred to trustees under a trust instrument giving the trustees powers quite similar to those in the case at bar. This court, in Coleman-Gilbert Associates v. Commissioner, 76 F. 2d 191, 192, held that the trust was not an "association". In our opinion we recited the testimony of one of the settlors of the trust to the effect that the purpose of forming the trust was to avoid a partition of the property in case of the death of any co-owner; that the trust in any event was to terminate in fifteen years; "that the power to purchase other property was inserted in the trust instrument simply to protect the holdings that the trust had; but this power and certain other broad powers vested in the trustees had never been exercised". We said, 76 F.2d at page 194,

"that it is not what the trustees are authorized to do under the trust instrument, but what they actually are doing"; "that the purpose for which the trust was formed is given weight in determining the nature of the organization". On certiorari, the Supreme Court reversed our judgment. Writing for the court, Chief Justice Hughes said, 296 U.S. at pages 373, 374, 56 S.Ct. at page 287, 80 L.Ed. 278:

"We agree with the Circuit Court of Appeals that weight should be given to the purpose for which the trust was organized, but that purpose is found in the agreement of the parties. Not only were they actually engaged, as the Board of Tax Appeals determined, in carrying on an extensive business for profit, but the terms of the trust instrument authorized a wide range of activities in the purchase, improvement and sale of properties in the cities and towns of the state. *The parties are not at liberty to say that their purpose was other or narrower than that which they formally set forth in the instrument under which their activities were conducted. Undoubtedly they wished to avoid partition of the property of which they had been co-owners, but their purpose as declared in their agreement was much broader than that.* They formed a combination to conduct the business of holding, improving and selling real estate, with provision for management through representatives, with continuity which was not to be disturbed by death or changes in ownership of beneficial interests, and with limited liability. They had been co-owners but they preferred to become 'associates,' and also not to become partners. Morrissey v. Commissioner, supra." [Italics ours.]

That the language in the foregoing quotation closely fits the F. R. Sears Real Estate Trust is apparent from a glance at the trust instrument. The trustees have wide powers to buy and sell real estate;[3] to improve and develop the same by the erection of buildings, or otherwise; to repair or rebuild any building damaged by fire or otherwise; to lease; to employ such agents

---

[3] The trust indenture provides: "The trustees may purchase with such funds as they may from time to time have in their hands any real estate or any interest in real estate encumbered or unencumbered, and may hire and become lessees of any property, easement or right, the use of which is, in their judgment, advantageous to real estate held hereunder." Appel-

lants contend that this does not confer an unrestricted power to purchase land, but that the power to purchase as well as the power to become lessees of land is limited by the last clause in the provision just quoted. We do not so read this provision of the indenture, but our conclusion would not be different if the narrower interpretation were given.

and assistants as deemed necessary; to invest and reinvest funds "in any securities they see fit"; to pay from the net income of the trust property "such dividends to the beneficiaries as they may from time to time deem expedient". In quest of profits the trustees are in effect empowered to engage in extensive real estate operations and in the business of investing and reinvesting in securities. Even if at any time all of the real estate may have been disposed of, the termination of the trust is at the absolute discretion of the trustees. In the language of the Morrissey case, 296 U.S. at page 357, 56 S.Ct. at page 295, 80 L.Ed. 263, this trust provides "a medium for the conduct of a business and sharing its gains". As was said in the Coleman-Gilbert case, supra, "the parties are not at liberty to say that their purpose was other or narrower than that which they formally set forth in the instrument under which their activities were conducted".

We conclude that the district court was right in holding that the trust was subject to the income tax imposed on corporations for the years in question.

### The Capital Stock Tax.

■■ This is an excise tax not on the *privilege* of doing business during the year but "with respect to carrying on or doing business for any part of such year". As the court held in United States v. Emery, Bird, Thayer Realty Co., 237 U.S. 28, 32, 35 S.Ct. 499, 501, 59 L.Ed. 825, "The question is rather what the corporation is doing than what it could do". In the case at bar the trustees many years ago had sold all the parcels of real estate but one; during the tax years now in question, they were not engaged in real estate operations nor in the business of buying and selling securities. They acted merely as lessors of a single building under a long-term lease to S. S. Kresge Co. The lessees assumed all the burden of management, operation, upkeep and insurance, and paid the trustees a net rental plus taxes. The trustees received the rent, paid the taxes and mortgage interest, added semi-annually to a time deposit with the Massachusetts Hospital Life Insurance Co. for the purpose of building up a fund to pay off the mortgage at the expiration of the lease, and distributed the remainder of the rental income to the beneficiaries quarterly. In 1936 and 1937 the trustees were incidentally engaged in litigation with the lessee as to the right of the latter to terminate its liability by assignment of the lease.

It is recognized that "The case is exceptional in which the activities of a corporation organized for profit do not amount to doing business within the meaning of the Act". Article 42, Treasury Regulations 64 (1936 ed.). Article 43 of these Regulations recognizes as one of the exceptional cases "the distribution of the avails of property and the doing only of such acts as may be necessary for the maintenance of its corporate status in the case in which the corporation either was organized for, or has reduced its activities to, the mere owning and holding of specific property". In Article 32 of Treasury Regulations 64 (1934 ed.) it is said: "The leasing of all the property of a corporation whereby it divests itself of all control and management thereof, or the sale of all the property of a corporation and the reduction of its activities to the mere collection of the proceeds of the sale on an installment plan, are other instances of retirement from business."

We think the facts of the present case fall within McCoach v. Minehill Ry. Co., 228 U.S. 295, 33 S.Ct. 419, 57 L.Ed. 842. See also Zonne v. Minneapolis Syndicate, 220 U.S. 187, 31 S.Ct. 361, 55 L.Ed. 428; United States v. Emery, Bird, Thayer Realty Co., 237 U.S. 28, 35 S.Ct. 499, 59 L.Ed. 825. In the McCoach case a railway corporation had leased its road to another company and had retired completely from the maintenance and operation of the road. It maintained its corporate organization and was ready to resume possession of the property at the expiration of the lease. It collected and distributed to its stockholders the rental from the lessee. It also maintained a so-called contingent fund which involved considerable activity in investment and reinvestment in securities, yielding an annual income of over $24,000. The court held that the corporation was not "doing business" within the meaning of the statute. The dissenting justices thought that the investment activities of the corporation should be considered "doing business" for profit. In this respect the McCoach case was a stronger one for the Government than the case at bar, where the trustees were not engaged in managing investments but merely made periodic deposits with the Massachusetts Hospital Life Insurance Co., to build up a fund with which to pay off the mortgage at

the termination of the trust. The Mc-Coach case has been distinguished on its facts in later cases. Von Baumbach v. Sargent Land Co., 242 U.S. 503, 37 S.Ct. 201, 61 L.Ed. 460; Edwards v. Chile Copper Co., 270 U.S. 452, 46 S.Ct. 345, 70 L. Ed. 678. It has not, however, been disapproved, and we must accept it as a binding authority. See Kingkade Hotel Co. v. Jones, D.C., 30 F.Supp. 508.

It follows that the district court should have given judgment for the appellants in the amount of the capital stock taxes paid for the years in question, plus interest.

In the first case the judgment of the district court is affirmed. In the second case the judgment of the district court is vacated and the cause remanded to that court for further proceedings in conformity with this opinion.