**HILL et al. v. REYNOLDS.**

**SAME v. UNITED STATES (two cases).**

**Civ. Nos. 624, 1198, 1199.**

District Court, D. Minnesota, Third Division.

Jan. 26, 1948.

Doherty, Rumble, Butler & Mitchell, Pierce Butler, Jr., and Irving Clark, all of St. Paul, Minn., for plaintiffs.

Paul McMahon, Sp.Asst. to the Atty. Gen., and Linus J. Hammond, Asst. U. S. Atty, of St. Paul, Minn., for defendants.

DONOVAN, District Judge.

Plaintiffs, as trustees under an agreement of trust hereinafter described, brought three actions for the recovery of capital stock, declared-value excess profits, and income taxes, and assert the taxes were erroneously and illegally assessed and collected by defendants.

Civil action No. 624 involves capital stock taxes for the years ending on June 30, 1936, 1937, 1938, 1939, 1940 and 1941. Civil action No. 1198 involves capital stock taxes for the years ending on June 30, 1942, 1943, 1944 and 1945. Civil action No. 1199 involves income taxes for the years 1938, 1939, 1940, 1941, 1942, 1943 and 1944, and declared-value excess profits taxes for the years 1939, 1940 and 1942. The first suit was brought against the then Collector of Internal Revenue, to whom the taxes had been paid. The latter two suits were brought against the United States under Section 24(20) of the Judicial Code, 28 U.S.C.A. § 41(20), permitting such suit when the Collector to whom tax was paid is out of office.

By agreement of the parties the actions were consolidated for trial. There is no dispute as to the amounts and dates of payment of the taxes. It is not disputed that timely claims for refunds were filed, and upon rejection the three actions were timely commenced and predicated upon the grounds set forth in said claims. Facts were stipulated and testimony taken, disclosing that a trust agreement was entered into on December 7, 1906, between Lake Superior Company, Limited, an association organized under the laws of the State of Michigan (hereinafter referred to as The Superior Company), party of the first part, and Louis W. Hill, James N. Hill, Walter J. Hill and Edward T. Nichols, parties of the second part, who, with their successors, were designated trustees under said agreement.

So far as here material, the agreement provided that shares of stock in ten corporations (herein described as the proprietary companies) of the stated par value of $1,738,400, held by the first party for the benefit of the shareholders of the Great Northern Railway Company, at the direction of the Railway Company were transferred to, and title vested in, the second parties as trustees. The stock placed in trust is for a number of lives in being and 20 years thereafter. The trustees, while holding said stock, are required to exercise their powers as "shareholders to preserve the existence and the organization of such corporation, and to secure at all times proper management of the property and business and affairs of such corporation".

The proprietary companies owned in fee or controlled by leasehold, about 49,000 acres of land, and also owned an undivided one-half interest in about 16,000 acres. By the end of 1943, the foregoing acreage had been reduced to about 23,000 acres, in one way or another. All of the proprietary companies, other than the Arthur Iron Mining Company, are engaged in the ownership and leasing of land for the mining of iron ore. The mines and operation thereof are something separate and distinct from the trust. The companies involved have not operated any of the mines since 1937. The Arthur Company maintained a staff of 32 employees to check up on the carrying out of the contracts of lease and collecting the royalties. The other proprietary companies by resolution of their boards appointed the Arthur Company their fiscal agent without any record of action by plaintiff trustees who were the stockholders in said companies, and who as such stockholders made a consolidated report for all said companies at their an-

nual meeting on the first Monday in October of each year for election of officers and declaration of dividends.

The trustees are fully empowered to sell or exchange the trust property and to invest the proceeds thereof in other property which is to be held under and subject to the same trust, and were also empowered to hire suitable offices and employ clerks, attorneys, mining engineers and other agents or persons deemed requisite for the proper execution of the trust, and to keep books of account of receipts, expenses and business transactions, and a record of their meetings. Annual reports of receipts and disbursements and the condition of the trust are required to be made by the trustees to the registered owners of 1,500,000 shares of the stock of the Great Northern Railway Company as of December 6, 1906, and who hold certificates therefor as provided by the trust agreement, and the trustees are required to "collect and receive all dividends declared upon such shares, and all other income or profits or other moneys that may accrue to them", and out of said receipts to pay all trust expenses, including compensation to the trustees, which in the case of the one chosen president was to be $25,000 per annum, until such time as the gross income of the trust equalled $5,000,-000 in any one year, in which event said salary was thereafter to be added to by a sum equal to one per cent of the excess of the gross income of the trust for that year over $5,000,000, until his annual salary reached $50,000. The compensation of each of the remaining trustees is $10,000 per year. The trustees receive a total of $55,-000 per year, of which $48,000 is paid by the proprietary companies for services rendered such trustees (which is approved by the government as a fair charge for such services), as distinguished from service rendered the trust. The trustees and proprietary companies used the same person as secretary and treasurer, for which he was paid $25,000 per year by the Arthur Company. The trustees' compensation came out of trust earnings. They were also members of the board of all proprietary companies, but received no compensation as such directors. Certificates of beneficial interest in the trust property are traded on the New York Stock Exchange, separate and distinct from any interest in the Great Northern Railway Company. From time to time, and at least once in every year, the trustees are required to distribute and pay to the holders of said certificates the net income of the trust property.

Between the date of the creation of the trust and 1944, the receipts of the trust estate amounted to $99,813,104.34, and during the same period $97,125,000 in dividends were distributed to the beneficiaries, leaving $47,159.89 in the trust at the end of 1943, after deducting income taxes and other expenses in the sum of $2,640,944.45. Of the amount disbursed to beneficiaries, $54,400 was recognized by agreement with the Commissioner of Internal Revenue as return of capital.

During the taxable years herein the trustees, as managers of the trust, have realized about two to three million dollars per annum, and the customary method of paying expenses and distributing the earnings of the trust was followed and adhered to by them. The trustees paid income taxes for the years 1917 to 1920, both inclusive, which were later refunded by the government "on the ground that they [the trustees] were not liable for income taxes as an association". This was later revoked by a ruling of the Treasury on January 6, 1942, G.C.M. 23061 (1942–2 C.B. 159). In support of its ruling the Treasury said:

"A reconsideration of S. 1205 (C.B. 1, 7 (1919) is requested.

\* \* \* \* \* \*

"In S. 1205, supra, the test applied to distinguish a trust from an association was whether the beneficiaries retained any substantial control over the affairs of the trust. It was concluded that the certificate holders had no control whatsoever over the affairs of the trust, and that the trust could not be classified as an association.

"After the decision in Crocker v. Malley, 249 U.S. 223, 39 S.Ct. 270, 63 L.Ed. 573, 2 A.L.R. 1601, rendered shortly before the issuance of the above ruling, it was assumed that the above-stated test was determinative of the question of whether a trust constituted an association. The regula-

tions thereafter promulgated provided that if the trust beneficiaries were given a voice in the conduct of the business of the trust, the trust was an association. (Regulations 45 and 62, article 1504.) This view prevailed until the decision was rendered in Hecht v. Malley, 265 U.S. 144, 44 S.Ct. 462, 468, 68 L.Ed. 949; T.D. 3595, C.B. III-1, 489 (1924), in which the Supreme Court concluded that inasmuch as the trustees were 'not merely trustees for collecting funds and paying them over' but were 'associated together in much the same manner as the directors in a corporation for the purpose of carrying on business enterprises' the trusts therein involved should be deemed associations, independently of the large measure of control exercised by the beneficiaries. Following that decision the regulations were amended to provide that the distinction between an association and a trust should no longer depend upon beneficiary control. (Regulations 65, article 1504.) Such amendment of the regulations had the effect of abandoning the test laid down in S. 1205, supra.

"The Supreme Court in 1935 granted certiorari in a number of cases involving the distinction between a trust and an association. The Court dispelled much confusion of thought existing because of previous decisions of lower courts by its reasoning expressed in its later decisions. (Morrissey v. Commissioner, 296 U.S. 344, 56 S.Ct. 289, 80 L.Ed. 263; Ct.D. 1064, C.B. XV-1, 264 (1936); Swanson v. Commissioner, 296 U.S. 362, 56 S.Ct. 283, 80 L.Ed. 273; Ct.D. 1065, C.B. XV-1, 270 (1936); Helvering v. Combs, 296 U.S. 365, 56 S.Ct. 287, 80 L.Ed. 275; Ct.D. 1066, C.B. XV-1, 272 (1936); and Helvering v. Coleman-Gilbert Associates, 296 U.S. 369; 56 S. Ct. 285, 80 L.Ed. 278; Ct.D. 1067, C.B. XV-1, 261 (1936). The Court stated that an 'association" implies associates entering into a joint enterprise for the transaction of business and sharing of gains, with centralized management and continuity of existence. The Court again held that it was not essential in the creation of an association to vest control in the beneficiaries.

"In the instant case the trustees hold controlling interests in a number of corporations which own vast mineral deposits.

The trustees were given broad authority to secure the proper management of such corporations. They were also authorized to sell any property conveyed to them as trustees, and reinvest the proceeds at their discretion. The beneficiaries were to share in the gains of the business conducted by the trustees. The trust having centralized management and continuity of existence was organized and operated for the purpose of conducting a business enterprise for the joint benefit of the certificate holders.

"It is therefore held that the instant trust * * * is an association taxable as a corporation under the provisions of section 3797(a)3 of the Internal Revenue Code, and under similar provisions of prior revenue laws.

"In view of the foregoing, S. 1205, supra, is revoked."

As a result, taxes were paid under protest and refunds claimed by plaintiffs.

The foregoing summary of facts raises two issues for decision.

1. Is the trust an association subject to income tax as a corporation?

2. Were plaintiffs during the years here in question carrying on or doing business so as to subject them to capital stock and excess profits taxes?

In accomplishing the end in view, does the trust resemble a corporation in form of organization, carrying on a business that shares its gains, as distinguished from a mere holding and conserving of the trust property, with the exercise of powers incidental to the traditional type of trust? If the trust constitutes a taxable association, were the capital stock and declared-value excess profits taxes imposed "with respect to carrying on or doing business for any part of such year"?

Plaintiffs contend that as trustees they were not "carrying on or doing business" for profit, so as to subject them to income and excess profits taxes as an association, under the provisions Section 3797(a) (3) of the Internal Revenue Code, 26 U.S.C.A. Int.Rev. Code, § 3797(a) (3), and Sections 1001(a) (2) and 901(a) (2) of the Revenue Acts of 1936 and 1938. Further, that they as trustees were not carrying on or doing

business so as to be subject to capital stock taxes under the provisions of Section 1200(a) of the Internal Revenue Code, 26 U.S.C.A. Int.Rev. Code, § 1200(a), and Sections 401 and 601 of the Revenue Acts of 1936 and 1938.

Defendants contend the contrary, claiming the trust instrument has the salient features of a business trust and that plaintiffs constitute an association analogous to a corporation carrying on a business enterprise for profit.

Plaintiffs argue that taxing statutes are to be strictly construed against the government and that the trust in the case at bar is not a "business trust"; that the motive leading to its creation was to distribute "illegally connected property" consisting of stocks of certain corporations owning or in possession of natural resources, and that plaintiff trustees "were not given the powers of directors but of stockholders", and contend that the trust merely served as a conduit for dividends of corporate stock held in trust by plaintiffs; that the receipt of income from property or investments and distribution of that income is not carrying on a taxable business, citing, among other cases: Zonne v. Minneapolis Syndicate, 220 U.S. 187, 31 S.Ct. 361, 55 L. Ed. 428; McCoach v. Minehill & S. H. Railway Co., 228 U.S. 295, 33 S.Ct. 419, 57 L.Ed. 842; United States v. Emery, Bird, Thayer Realty Co., 237 U.S. 28, 35 S.Ct. 499, 59 L.Ed. 825; Crocker v. Malley, 249 U.S. 223, 39 S.Ct. 270, 63 L.Ed. 573, 2 A.L.R. 1601; Hassett v. Welch, 303 U.S. 303, 314, 58 S.Ct. 559, 82 L.Ed. 858.

Defendants cite a number of cases, but seem to rely chiefly on Morrissey v. Commissioner, 296 U.S. 344, 56 S.Ct. 289, 296, 80 L.Ed. 263, as a barrier to the conduit theory, claiming that proof as to whether the trust is of the business or traditional type must be "determined by the terms of the trust instrument". It is not what is done, but *what could be done*.

■ The trust, no doubt, at the time of its creation was conceived by those in control of the Great Northern Railway Company for the purpose of divorcing holdings of natural resources from the Railway Company, so as to comply with the Hepburn

Act passed by Congress in June, 1906, 49 U.S.C.A. § 1 et seq. The character of a trust as an association is not determined by the intentions or expectations of its creator, but rather by the potential possibilities under the trust instrument. Id.

■ The presumptive correctness of the Treasury ruling with reference to this trust until overcome by plaintiff's evidence has the dignity of law because "the Treasury Department was authorized to supply rules for the enforcement of the Act within the permissible bounds of administrative construction. Nor can this authority be deemed to be so restricted that the regulations once issued could not later be clarified or enlarged so as to meet administrative exigencies or conform to judicial decision". Id. The ruling of the Commissioner of Internal Revenue is prima facie correct; hence the burden of proof is on the plaintiff taxpayers to establish their right to the refunds herein sued for. Welch v. Helvering, Commissioner of Internal Revenue, 290 U.S. 111, 115, 54 S.Ct. 8, 78 L.Ed. 212; Wickwire v. Reinecke, 275 U.S. 101, 48 S.Ct. 43, 72 L.Ed. 184.

As I view the applicable law, plaintiffs' task in carrying the burden of proof required of them is based almost entirely on the wording of the trust agreement. United States v. Emery, Bird, Thayer Realty Co., supra. As said by plaintiffs in their brief, the Morrissey case, supra, is the last Supreme Court pronouncement on the general proposition of trusts taxable as associations. The Treasury ruling, i. e., G.C.M. 23061 (1942-2 C.B. 159), relies on the Morrissey and other cited cases in revoking its previous holding that these plaintiffs were not a taxable "association". Resort to the Morrissey decision discloses that certiorari was granted because of a conflict of decisions with reference to the distinction between an "association" and a "pure trust". Chief Justice Hughes, speaking for the Court said 296 U.S. 344, at pages 356, 357, 56 S.Ct. 289, 295, 80 L.Ed. 263:

"While it is impossible in the nature of things to translate the statutory concept of 'association' into a particularity of detail that would fix the status of every sort of enterprise or organization which ingenuity

may create, the recurring disputes emphasize the need of a further examination of the congressional intent.

" 'Association' * * * implies the entering into a joint enterprise, * * * for the transaction of business. This is not the characteristic of an ordinary trust * * * for the benefit of named * * * persons. Such beneficiaries do not ordinarily, and as mere *cestuis que trust*, plan a common effort or enter into a combination for the conduct of a business enterprise. * * * In what are called 'business trusts' the object is not to hold and conserve particular property, with incidental powers, as in the traditional type of trusts, but to provide a medium for the conduct of a business and sharing its gains. * * * where those who become beneficially interested, either by joining in the plan at the outset, or by later participation according to the terms of the arrangement, seek to share the advantages of a union of their interests in the common enterprise."

The Court went on to hold that revision of Treasury Regulations defining the term "association" in the Revenue Act of 1924, was in effect approved by Congress in subsequent Revenue Acts through the reenactment without substantial change of the provision so construed by the Department, and further held that a trust "is to be classed as an 'association' within the meaning of the Revenue Acts * * * when the following attributes, analogous to those of corporate organizations, are present: (1) title to property embarked in the enterprise held by trustees, as a continuing body, during the existence of trust; (2) centralized management by trustees, as representatives of beneficial owners, whether selected by or with the advice of beneficiaries or designated in the trust instrument with power to select successors; (3) continuity uninterrupted by deaths among beneficial owners; (4) means for transfer of beneficial interests and introducing new participants without affecting continuity; (5) limitation of personal liability of participants to property embarked in the undertaking".

The instant case presents a trust that has some of the characteristics of a corporation. It provides for centralized control,

continuity of management, issuance of certificates corresponding to shares of stock and appointment of a corporation Registrar of Transfers and transfer agent. Helvering v. Coleman-Gilbert Associates, 296 U.S. 369, 56 S.Ct. 285, 80 L.Ed. 278.

The Morrissey case makes clear that the character of the trust for income tax purposes is dependent on the phraseology of the trust instrument under consideration. United States v. Homecrest Tract, 9 Cir., 160 F.2d 150. The identical trust instrument here in question was before the Supreme Court of Minnesota in the case of Venner v. Great Northern Ry. Co. et al., 108 Minn. 62, 121 N.W. 212. Describing the agreement of trust at pages 64, 65 of 108 Minn., at page 214, of 121 N.W., the Court then comments as follows: "The record herein shows that the defendant trustees are associated by contract as such in the transaction of a business of great magnitude, and that the legal title and exclusive possession of the property which is the basis of such business is vested in them jointly as trustees, with full power of control and disposition thereof. Then why should not the service of the summons in this case upon one of the associated trustees, especially upon their president, who is the active manager and executive officer in carrying on their business, authorize a judgment binding the property which forms the subject-matter of the business? The respondents answer that they are not associates transacting business within the meaning of the statute, because they are associated together, not by their own act, but by the act of the creator of the trust. They voluntarily, by their written contract, the trust agreement, associated themselves for the purpose of carrying on the business of managing and disposing of the property conveyed to them in trust. If, as alleged, a third party, the Superior Company, set them up in business, by transferring to them the property of another as a basis for the business, it is difficult to see how such fact can affect the question whether they are associates and doing business under the meaning of the statute." (Rev.Laws, Minnesota, 1905, sec. 4068 [M.S.A. § 540.15].)

The Venner case, as plaintiffs' counsel point out, came about on motions preliminary to answer and trial, having to do with the meaning of the Minnesota statute permitting service of process on two or more persons transacting business as associates under a common name, and hence is readily distinguished from the instant cases. Recognizing the distinction, it should be noted, however, that the Court in the Morrissey opinion pursued a course of reasoning along similar lines, in discussing the advantages that flow from this type of trust, as distinguished from the traditional type, saying: "It is no answer to say that these advantages [trustees with succession; trustees exercising powers of directors; a trust enterprise secured against termination by death of owners of beneficial interests; a trust organization facilitating transfer of beneficial interests without effecting continuity of enterprise] flow from the very nature of trusts. * * * The suggestion ignores the postulate that we are considering those trusts which have the distinctive feature of being created to enable the participants to carry on a business and divide the gains which accrue from their common undertaking, trusts that thus satisfy the primary conception of association and have the attributes to which we have referred, distinguishing them from partnerships. In such a case, we think that these attributes make the trust sufficiently analogous to corporate organization to justify the conclusion that Congress intended that the income of the enterprise should be taxed in the same manner as that of corporations." 296 U.S. 344, at pages 359, 360, 56 S.Ct. 289, 296, 80 L.Ed. 263.

Under the circumstances, it is my opinion that the additional fact that the trustees may have acted as a conduit for income from trust property to the beneficiaries, is not alone conclusive. The test seems to be whether the trust instrument discloses a "business trust" as distinguished from a "pure trust". I conclude plaintiffs have not carried the burden of proof required of them with reference to the claim for refund of income taxes in civil action No. 1199.

■■ The capital stock and excess profits taxes have to do with the years 1936, to 1945, inclusive. These taxes are "with respect to carrying on or doing business for any part of such year[s]". As held by the Court in the Emery case, supra, [237 U.S. 28, 35 S.Ct. 501], "The question [here] is rather what the * * * [trust] is doing than what it could do". The plaintiffs had been doing no business of consequence during any part of such years here. The activities of the trustees during the years in question bring the facts with reference to capital stock and excess profits taxes as sued for by plaintiffs in civil cases numbered 624, 1198 and 1199 within the McCoach, Zonne and Emery cases, supra. See also, Sears et al. v. Hassett, 1Cir., 111 F.2d 961.

Consistent with this opinion, plaintiffs may submit findings of fact, conclusions of law, order for judgment, and form of judgment, in civil cases numbered 624 and 1198.

Defendant may submit findings of fact, conclusions of law, order for judgment, and form of judgment, in civil case numbered 1199, excluding recovery of excess profits taxes for the years 1939, 1940 and 1942.

All aggrieved parties may have an exception.