## SOLOMON et al. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 8305.

Circuit Court of Appeals, Fifth Circuit.

April 8, 1937.

Orville A. Park and Walter T. Johnson, both of Macon, Ga., for petitioners.

S. Dee Hanson, Norman D. Keller, and Sewall Key, Sp. Assts. to Atty. Gen., and Robert H. Jackson, Asst. Atty. Gen., Morrison Shafroth, Chief Counsel, Bureau of Internal Revenue, and DeWitt M. Evans, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for respondent.

Before FOSTER, SIBLEY, and HUTCHESON, Circuit Judges.

SIBLEY, Circuit Judge.

The Commissioner, upheld by the Board of Tax Appeals, decided that the Roberts-Solomon trust estate is an association taxable on its 1932 income as a corporation under Revenue Act of 1932, §§ 13 and 1111 (a) (2), 26 U.S.C.A. §§ 13 and note 1696 (3), rather than as "property held in trust" under sections 161 and 162 (26 U.S.C.A. §§ 161, 162 and notes) which impose taxes as on the income of individuals. We have before us on this review of the Board's decision only its findings of fact and the trust instrument.

The main facts found are that the grantor, Mrs. Roberts-Solomon, owning in Macon, Ga., three three-story mercantile buildings and one of two stories conveyed

them to five of her sons as trustees in 1930. The trustees thereafter handled the property, passed on the desirability of prospective tenants, decided on rentals and the clauses to be put in the various leases, and on all expenditures. One of them was appointed manager at a salary of $250 per month, and he maintained an office at the expense of the trust where he transacted the trust business during 1932 for an average of two to four hours per day. Rents were collected monthly by an employed real estate firm. Complete books and records were kept for the trust and audited each year by a hired accountant, and monthly and annual reports were made by the trustees to the beneficiaries. A trust seal was adopted and used on trust certificates, leases, and other instruments. The trustees decided what income should be distributed, and made monthly distributions to the beneficiaries which in 1932 amounted to $15,031. Distributions were not always according to shareholdings, but the amounts were treated as advances and 6 per cent. interest was charged until a final accounting at the termination of the trust.

The trust instrument is elaborate, and creates what we may call a main trust and several dependent trusts. The main trust is the conveying of the property to the five trustees "in trust for the benefit of the cestuis que trustent, the persons beneficially interested therein in accordance with the provisions of this deed and holding certificates of beneficial interest issued by the trustees as hereinafter provided, and as authorized by section 3793 of the Civil Code * * * who shall be trust beneficiaries only, without partnership, associate or other relationship whatever inter sese. The beneficial interests of the cestuis que trustent hereunder and the certificates evidencing the same shall pass and be transferred as personalty as provided in the last mentioned section of the Code." There are thus in the main trust no named or personal beneficiaries, but only impersonal certificateholders, and they own not merely an equity in real estate but title to a certificate. The deed after giving the trustees the powers of an owner in managing, improving, selling, or exchanging the property without control by the certificateholders, provides that they shall issue to the grantor transferable certificates for eleven hundred fractional beneficial interests or shares "in exchange and full payment for" the property conveyed, which are to be under the seal of the trustees and

to be conclusive evidence of ownership, and on transfer and surrender are to be substituted by new ones. The form of certificate is set out, which recites that the holder is under no personal liability and that it is issued pursuant to section 3793 of the Civil Code of Georgia and the trust deed. Such is the character of the main trust.

As subsidiary trusts, the grantor transfers to the same trustees 100 shares for each of her nine children by name (including the trustees themselves), and 100 shares for two minor grandchildren, in trust to pay them the "dividends, issues and profits arising from and distributed by the trustees" in respect thereof, for a term of years. The complicated limitations over of these subsidiary trusts are not here material. So far as appears, the trustees in 1932 still held the legal title to the 1,000 shares transferred to them, and the grantor still held the remaining 100 shares. No additional shares appear to have been issued, though the deed and the statute referred to permit such.

The deed further provides that the trustees shall have compensation not exceeding 1 per cent. of the gross income, and shall have advice of counsel and "traveling expenses to and from any meeting of the trustees"; provides for resignation and makes it incumbent on the trustees to fill any vacancy promptly "so as to maintain a full board of five trustees." The terms of the trust may be amended and added to by the trustees with the assent of a majority in interest of other cestuis que trustent who are sui juris acting individually and not in meeting. The estate and the trustees are given the name Roberts-Solomon trust estate, and the trustees are authorized to use that name and are required to adopt a seal. They may make rules and regulations for the governance of themselves and others in matters relating to the trust. The trust is to expire in twenty-five years, but may be extended another twenty-five years by the trustees and cestuis que trustent in the manner provided for amendments. The trustees may terminate the trust earlier. On termination the affairs are to be wound up and title to the property is to pass to the then holders of beneficial certificates.

We are not concerned with the subsidiary trusts which affect for a time some of the certificates. They are of a personal and family sort. Our concern is with the

main trust and its character. It has been rightly determined to be an association, the grantor and the five trustees who initially took title to the entire 1100 beneficial shares being the original associates. The grantor contributed all the property, but her sons undertook the management of the enterprise and received for themselves and others shares in it. Each person on accepting shares in a business enterprise thus organized becomes an associate. This was and is a business enterprise. It does not appear how many tenants there are, but the facts found indicate that an extensive and profitable business is conducted which requires constant attention. The renting of a single apartment house was held a business in this connection in Swanson v. Commissioner, 296 U.S. 362, 56 S.Ct. 283, 80 L.Ed. 273. There is more than the incidental activity of a trustee touching the management of ordinary trust property. There is more than the activity sometimes necessary before an estate can be wound up and disposed of. This business is to be maintained for profit for a long period of time, and not necessarily for the benefit of stated persons, for the certificates are transferable and all may pass into other hands. There is a clear purpose in this trust to secure for several persons in the conduct of a business the benefits incident to incorporation, to wit, centralized control, title not vested directly in those who own it, absence of personal liability, no disturbance by their death or insolvency or by transfer of their several interests. The nearness to a corporate status becomes more clear on considering the Georgia statute referred to in the deed and the certificates. The general Georgia law, Civil Code of 1910, §§ 3736, 3737, 3738, prevents, by executing them, trusts for persons capable of taking and managing property in their own right, unless "something remains to be done by the trustee, either to secure the property, to ascertain the objects of the trust, or to distribute according to a specified mode, or some other act, to do which requires him to retain the legal estate." But in 1899 a statute was passed which became sections 3792–3795 of the Civil Code, whose object, as stated in the title, was "to provide the manner by which the owners of property may create by deed an estate therein, and the improvements placed thereon, for the benefit of themselves, and such other persons as may contribute to the development or improvement of same." (Laws Ga.1899, p. 57.) The method was to authorize a trust for twenty-five years with a right of renewal, with certificates of beneficial interests issued to those who contribute property or money to improve it. Section 3793 referred to in this deed and in the certificates issued under it states the nature and incidents of the certificates thus: "Which certificates shall pass and be transferred as personalty and in the same manner as shares of stock in corporations; and the same shall be subject to levy and sale under attachment or execution or any other process, in like manner as shares of stock." Persons having claims against the estate "may enforce the same by suit against the trustee or trustees thereof, in like manner as suits against corporations * * * and the venue of such suits shall be the same as that of similar suits against private corporations, but neither the trustees nor the beneficiaries of such estate shall be personally or individually liable therefor except in cases where officers and stockholders of private corporations are now liable under the law." These provisions are by express reference, as well as because they are the applicable law, written into this deed. They leave no doubt that benefits characteristic of a corporation have been here sought to be availed of in order to do business. The federal income tax statutes intend to tax as corporate income that arising from business thus done, even though a trust is used to organize it. Morrissey v. Commissioner, 296 U.S. 344, 56 S.Ct. 289, 80 L.Ed. 263; Swanson v. Commissioner, 296 U.S. 362, 56 S.Ct. 283, 80 L.Ed. 273; Helvering v. Combs, 296 U. S. 365, 56 S.Ct. 287, 80 L.Ed. 275; Helvering v. Coleman-Gilbert Associates, 296 U.S. 369, 56 S.Ct. 285, 80 L.Ed. 278. These cases explain and modify Crocker v. Malley, 249 U.S. 223, 39 S.Ct. 270, 63 L. Ed. 573, 2 A.L.R. 1601.

Judgment affirmed.