ELM STREET REALTY TRUST, WHITFIELD W. JOHNSON, TRUSTEE, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 1977–79.     Filed May 18, 1981.

*William C. Hays* and *Robert F. Corliss*, for the petitioner.
*Barry J. Laterman*, for the respondent.

NIMS, *Judge*: Respondent determined deficiencies in petitioner's income tax for the taxable years ending February 28, 1975, February 29, 1976, and February 28, 1977, in the respective amounts of $4,538.82, $4,320.88, and $3,912. The issue for decision is whether the Elm Street Realty Trust is an association within the meaning of section 7701(a)(3)[1] and thus taxable as a corporation.

### FINDINGS OF FACT

Some of the facts have been stipulated. The stipulation and the exhibits attached thereto are incorporated herein by reference.

At the time the petition in this case was filed, petitioner's principal office was located in Boston, Mass.

The Elm Street Realty Trust (petitioner or the trust) was formed at the behest of Zenas O. Egan and Earle B. Harvey by a declaration of trust dated March 1, 1971. At that time, Egan and Harvey were in the wholesale automobile parts business in Massachusetts; they had a business relationship with a Connecticut company named Risley-Leete Co., Inc. (Risley), which sold automobile parts. Also, at that time, Egan and Harvey were guarantors of certain obligations of Risley.

Risley was engaged in business on the premises located at 43–47 Elm Street, West Haven, Conn. A corporation controlled by an individual who was a former stockholder of Risley owned the

---

[1] All section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue, unless otherwise specifically indicated.

aforesaid Elm Street realty. Around the time the trust was created, the former stockholder was engaged in litigation with Risley.

Sometime prior to the formation of petitioner, an opportunity to purchase the Elm Street property was presented to Egan and Harvey. They believed that a purchase of the property would not only represent a good investment, but would also contribute to Risley's future stability because of the removal of an adverse lessor.

On March 1, 1971, the date of the petitioner's creation, Egan and Harvey effected a conveyance of the Elm Street property (which they previously had acquired) to the petitioner. Also on that date, the trustee, Whitfield W. Johnson, executed a lease with Risley on behalf of the trust.

The declaration of trust stated that petitioner was formed "to acquire, hold, improve, manage and deal in real estate." The maximum term of the trust was 11 years, the same duration as the lease term; the trust and the lease were intended to be coterminous. However, the trust could also be terminated if either of the following conditions, contained in article Third of the declaration of trust, occurred prior to the end of the 11-year term:

(b) Upon notice in writing to the Trustee then serving by the beneficiaries hereunder or the heirs or legal representatives of any beneficiaries who may then be deceased, as the case may be, stating that the within trust is thereby terminated and instructing the Trustee as to the disposition of the property then held by him in trust hereunder.

(c) Upon request in writing to the Trustee then serving by any beneficiary hereunder whose beneficial interest at such time as set forth under the provisions of Article First hereof as amended shall be 25% or more and that the within trust should be terminated provided that the Trustee then serving hereunder within seven days of receipt of such writing determines in his complete and absolute discretion that termination would be in the best interests of the beneficiaries hereunder.

## Article Second of the declaration of trust provides:

The Trustee shall hold and manage certain real estate conveyed to him this day being property generally known as 43–47 Elm Street, situated in West Haven, Connecticut, together with such other property as may now or hereafter be added to this trust and he shall collect the income therefrom and after paying all expenses in connection with the administration of his trust including all mortgage payments due from time to time, he shall distribute the net income therefrom at least as often as annually to the beneficiaries hereunder from time to time.

Pursuant to article Sixth of the declaration of trust, the trustee was authorized to engage in the following activities:

The Trustee shall have complete control, management and power to invest and reinvest the Trust property in any manner he may deem advisable and in any kind of property, real, personal mixed, tangible or intangible, without regard to whether such investments be such as are considered proper or legally authorized to be made by Trustees generally, and without in any way limiting the generality of the foregoing, the Trustee shall have the following powers:

To purchase or sell any property of any character, at public or private sale, for cash or credit, or upon such terms or conditions as he shall see fit; to let, hire or lease any property for any terms even beyond the termination of this Trust; to exchange, release (with or without consideration) or partition any property or interest of the Trust; to place restrictions, reservations or conditions upon property acquired or disposed of by the Trust; to lay out, grant or dedicate any part of any land owned by the Trust for roads, streets, sidewalks, squares, open places, and easements; to survey and plot any land of the Trust; to take and give options for land, property, or interests to be bought or sold by the Trust; to provide drains, sewers, water supplies, cables and other conveniences; to subdivide land of the Trust and to grant or purchase easements in, under or over the soil of land for any purpose; to build roads, paths, bridges and other structures necessary to develop land of the Trust or any other land; to landscape and develop any land of the Trust in any way, and to remove soil, rock and other minerals and to sell or dispose of such materials in any way; to erect buildings of any sort, and to improve, remodel, demolish, move or otherwise alter or dispose of any buildings of the Trust or any other buildings; to pay commissions of any amount and by any means, to brokers and others for services rendered the Trust; to advertise in any manner and to use any other means to attract business to the Trust; to insure the Trust or any property of the Trust against fire or any possible other hazard, liability or contingency, in forms and amounts, and with companies at his discretion, but the Trustee shall not be liable for any failure to insure; to loan funds or property of the Trust upon any sort of security or without security to any person, association or corporation; to assign, release in part, discharge, hypothecate or foreclose mortgages of the Trust; and the Trustee may borrow, upon construction loan-so-called, or upon conditional sale or lease and purchase agreement, or otherwise for the purposes of the Trust and may issue notes, bills of exchange, bonds, debentures and other evidences of obligation of this Trust; secured or unsecured, and to secure the same to execute mortgages, debentures, deeds of Trust, and collateral agreements and to secure the repayment by a pledge, mortgage or hypothecation of the Trust property or any part thereof. The Trustee shall also have every possible power and right of dealing with the Trust property and estate which an individual can have over his own property as full and completely as if such individual powers were herein expressed.

And for the foregoing purposes and in execution of any other powers of the Trustee (save the power to alter or amend this instrument or to resign this Trust) the Trustee may make such contracts with such persons, associations and corporations as he may deem desirable.

Petitioner's original beneficiaries were Egan and Harvey, each of them having a 50-percent beneficial interest. Article Fifth of the declaration specifically dealt with the matter of the transfer of beneficiaries' interests:

No beneficiaries' interest hereunder shall be the subject of any alienation, gift, sale, assignment, pledge or transfer except (a) by will or intestate disposition in the event of the death of such beneficiary from time to time or (b) as the Trustee hereunder from time to time and all of the other beneficiaries hereunder at such time shall agree to in writing, which writing together with a copy of the instrument making such transfer shall be attached hereto and made a part hereof and shall be deemed to be an amendment to Article First hereof [wherein Harvey and Egan are named as petitioner's beneficiaries] or the same may be signified by an amendment hereto complying with the provisions of Article Ninth of this trust.

Article Ninth provided for the amendment or modification of the trust document if a written instrument to that effect were signed and acknowledged by the trustee and all of the trust's beneficiaries.

Article Eighth generally provided for a limitation on the liability of the trustee and beneficiaries:

No Trustee or beneficiary shall be personally liable for any contract, tort, liability or obligation of the Trust and only the Trust estate shall be liable therefor, and all persons, associations and corporations dealing with the Trustee shall look only to the funds or property of the Trust for payment of any debt, damage, judgment or decree. The Trustee shall not be liable to any beneficiary except for his own willful misconduct, nor shall he be liable for any default, negligence or misconduct of any agent, servant, or attorney appointed by him to represent the Trust, nor shall the Trustee be required to give bond for the proper and faithful performance of his own duties or acts, nor for the acts of any agents, servants, or attorneys appointed by him.

Article Tenth provided that the trustee could resign at any time provided the beneficiaries were notified in writing. If the trustee resigned, died, or was unable to serve, the beneficiaries could appoint a new trustee by way of a written instrument. If a new trustee was not appointed within 30 days of the vacancy of the trustee's office, then Whitfield W. Johnson was authorized to choose the successor trustee.

One of the reasons Egan and Harvey utilized a trust to hold title to the Elm Street property was to facilitate their estate planning; they desired a form of ownership by which later transfers of beneficial interest to other members of their families would be permitted.

Whitfield W. Johnson, the trustee, is an attorney who has had substantial experience serving as trustee for a number of trusts. Except in his capacity as the attorney for Egan and Harvey, he had no business or professional relations with them. At the time of the trial of this case, he was serving as trustee or cotrustee of approximately 20 other trusts which have assets totaling between 15 and 20 million dollars.

Johnson's understanding with respect to the Elm Street Realty Trust was that it was to be a passive trust; his duties would be to collect the rent from the tenant, pay the mortgage, and distribute the income. The lease was a net lease under which Risley bore all expenses in connection with the property. Moreover, the trust was a "simple" trust which did not allow for any accumulation of income.

It was never suggested to Johnson that the trust purchase additional property. He had no duties with respect to the Elm Street property because they were all assumed by the lessee. He never had occasion to confer with any of the beneficiaries regarding the real estate nor did he ever see the trust real estate.

The various discretionary powers given to the trustee in the declaration of trust were inserted by Johnson as the attorney who drafted the trust instrument, without any participation by Egan and Harvey. It was Johnson's practice to include such powers in trust instruments in order to deal with any problems that might result from a wide array of unforeseen circumstances (e.g., fire, disaster, condemnations, etc.). Johnson never discussed the wording of these powers with Egan and Harvey.

There have never been any meetings of beneficiaries of the trust. It has no share certificates evidencing ownership of beneficial interests. It has no seal, bylaws, officers, stationery or printed material, and no place of business. Its affairs required a negligible amount of the trustee's time.

Subsequent to the petitioner's formation; Harvey transferred his 50-percent beneficial interest to his son, Kenneth Harvey, who in turn transferred one-half of his interest to John Belante and the other one-half of his interest to a trust for the benefit of his minor children. Subsequent to the petitioner's formation, Egan transferred his 50-percent beneficial interest to his daughter, Suzanne M. Egan, who in turn transferred her interest to a trust for her benefit.

## OPINION

The issue in this case is whether petitioner is an association within the meaning of section 7701(a)(3) and therefore taxable as a corporation. Respondent argues that the petitioner has a sufficient number of the corporate characteristics described in section 301.7701–2, Proced. & Admin. Regs., to warrant its classification as an association.

Section 7701(a)(3) defines corporations to include associations. The regulations promulgated pursuant to that section indicate that the presence or absence of (i) associates, (ii) an objective to carry on business and divide the gains therefrom, (iii) continuity of life, (iv) centralization of management, (v) liability for corporate debts limited to corporate property, and (vi) free transferability of interests, generally will determine whether an organization is to be classified as an association. Sec. 301.7701–2(a), Proced. & Admin. Regs.

The corporate characteristics which are our chief concern herein are (i) associates and (ii) an objective to carry on a business. Not only are these two characteristics essential to any association classification, they are also usually the only ones that are relevant when it becomes necessary to distinguish between a trust and an association. The primacy of these two characteristics in the case at bar is made clear by the regulations:

the absence of either of these essential characteristics will cause an arrangement among co-owners of property for the development of such property for the separate profit of each not to be classified as an association. * * * Characteristics common to trusts and corporations are not material in attempting to distinguish between a trust and an association, and characteristics common to partnerships and corporations are not material in attempting to distinguish between an association and a partnership. For example, since centralization of management, continuity of life, free transferability of interests, and limited liability are generally common to trusts and corporations, the determination of whether a trust which has such characteristics is to be treated for tax purposes as a trust or as an association depends on whether there are associates and an objective to carry on business and divide the gains therefrom. * * * [Sec. 301.7701–2(a)(2), Proced. & Admin. Regs.]

Accordingly, our analysis will focus primarily on whether petitioner has associates and the requisite business objective.

### Business Objective

Petitioner has directed a major portion of its argument toward the business objective issue. It is contended that the

trust was created solely for the purpose of protecting and conserving the Elm Street property for the trust's beneficiaries and that there never was any intent to engage in a business enterprise. Petitioner also avers that a business enterprise was never in fact engaged in since the trustee merely let the property on a net lease basis.

Respondent asserts that a business objective is discernible from the express terms of petitioner's organizing document, the declaration of trust. In particular, respondent characterizes the powers granted to the trustee as being extremely broad and as powers which would allow petitioner to engage in the operation of a business. Thus, the potential to engage in a business, as manifested by the trustee's powers in the declaration of trust, demonstrates a business objective which extends beyond the usual goals of private trusts, namely, the mere preservation and protection of the trust assets for the beneficiaries.

In response, petitioner counters that the powers enumerated in petitioner's declaration of trust are ordinary trust powers which were exercisable solely with a view to keeping the trust res invested. In an effort to negate any suggestion that the trustee's powers were overly broad, Whitfield W. Johnson, the attorney who drafted the trust instrument, testified that these powers were broad in scope in order to avoid any unforeseen circumstances that might arise.

To our mind, it seems reasonably clear that neither the original nor the subsequent beneficiaries ever intended that the trust would engage generally in the operation of a business. Nor can it be said that a business was ever actually conducted. The mere passive receipt of income from one parcel of rental property, particularly in a net lease context, does not constitute an activity which rises to the level of a business operation. Nonetheless, the form of petitioner's governing instrument indicates that petitioner had the potential to operate a business and the courts have consistently given substantial weight to the actual powers contained in an entity's organizing document, particularly where, as in article Sixth, they are of the type or scope which in our judgment go beyond the powers which normally involve the doing only of such business acts as traditionally and generally have been recognized as being incidents in the administration of an "ordinary" (vis-a-vis

"business") trust. See *Nee v. Main Street Bank*, 174 F.2d 425, 429 (8th Cir. 1949). We therefore agree with respondent that the powers given to petitioner's trustee provided the authority to engage in business activity. The presence of such powers, regardless of their exercise, require a finding of a business objective for purposes of section 7701(a)(3) and the regulations thereunder.

In *Morrissey v. Commissioner*, 296 U.S. 344 (1935), the landmark case which provides the basis for a substantial portion of the current association regulations, all of the business activity (primarily subdivision, construction, and lot sales of realty) occurred prior to the taxable years which were at issue; the trust there under scrutiny merely held stock of a corporation during the years before the Court. The Supreme Court noted that—

> The fact that these sales were made before the beginning of the tax years here in question, and that the remaining property was conveyed to a corporation in exchange for its stock, did not alter the character of the organization. Its character was determined by the terms of the trust instrument. * * * The powers conferred on the trustees continued and could be exercised for such activities as the instrument authorized. [*Morrissey v. Commissioner, supra* at 361.]

Similarly, in *Helvering v. Coleman-Gilbert Associates*, 296 U.S. 369 (1935), one of the three companion cases with *Morrissey*,[2] the Supreme Court emphasized the paramount status which is to be accorded the terms of the organizing document. The First Circuit had ruled in favor of the taxpayer in holding that the trust in question was not an association. Among other things, the court noted that the power to purchase additional property and other broad powers vested in the trustees had never been exercised. In reversing the Circuit Court's judgment, the Supreme Court stated:

> We agree with the Circuit Court of Appeals that weight should be given to the purpose for which the trust was organized, but that purpose is found in the agreement of the parties. * * * The parties are not at liberty to say that their purpose was other or narrower than that which they formally set forth in the instrument under which their activities were conducted. Undoubtedly they wished to avoid partition of the property of which they had been co-owners, but their purpose as declared in their agreement was much broader than that. * * * [*Helvering v. Coleman-Gilbert Associates, supra* at 373-374.]

---

[2] The other two cases were *Swanson v. Commissioner*, 296 U.S. 362 (1935), and *Helvering v. Combs*, 296 U.S. 365 (1935).

In the instant case, the organizing document stated that its purpose "shall be to acquire, hold, improve, manage and deal in real estate." In addition, article Sixth specified the various activities in which the trustee was authorized to engage. The specific powers included authorization to buy, sell, and subdivide property; provide drains, sewers, and cables; build roads, bridges, and other structures necessary to develop the land; landscape and develop the land in any way; and erect, improve, remodel, or demolish buildings. If petitioner had, for example, embarked upon a general and continued course of acquiring and improving property and then selling it in lots, we do not doubt that such would have comprised engaging in a business for present purposes.

The facts of the case at hand are similar to those in *Sears v. Hassett*, 111 F.2d 961 (1st Cir. 1940). In that case, six parcels of land were conveyed (jointly by the six residual beneficiaries of a will) in 1921 to a trust which contained "the usual broad powers found in Massachusetts real estate trusts." *Sears v. Hassett, supra* at 962. Shortly thereafter, the trustee entered into a long-term lease for one of the parcels. All of the other parcels were sold by 1925; between that time and 1935 and 1936 (the 2 taxable years which were at issue), the trustees merely leased the remaining parcel. Testimony was introduced to the effect that the beneficiaries did not establish the trust for the purpose of engaging in real estate operations as a business, but rather to simplify the holding of legal title and thus facilitate disposition of the remaining parcels. In analyzing whether the trust was created as a joint enterprise for carrying on a business, the First Circuit stated that—

the character of the trust as an association is not determined by the intentions or expectations of its creators, proved by parol, nor by the extent to which the powers in the trust instrument have actually been exercised, but rather by the purposes and potential activities as disclosed on the face of the trust instrument. * * * [*Sears v. Hassett, supra* at 962–963.]

See also *Nee v. Main Street Bank, supra* at 429.

It is thus apparent that some considerations relevant to the determination of the existence of a business objective include the trustee's discretion to improve and build upon any realty which might be acquired at some future time, as permitted here. In such a case, the trustee is empowered to exercise business judgment for the profit of those associated together (assuming

"associates" are present) in the undertaking. In the absence of limiting language contained in the organizing instrument, there is nothing to insure that the trust would not engage in future business activity even though it might initially be confined to function as a passive receptacle for rental or investment income. Compare *Commissioner v. North American Bond Trust*, 122 F.2d 545 (2d Cir. 1941), cert. denied 314 U.S. 701 (1942), with *Commissioner v. Chase National Bank*, 122 F.2d 540 (2d Cir. 1942). In the case before us, the trustee's powers were in no way limited merely to conserving and protecting the Elm Street property for the trust's beneficiaries. See *White v. Hornblower*, 27 F.2d 777 (1st Cir. 1928) (powers in organizing document of a liquidating trust limited by liquidation purpose); *Hugh MacRae Land Trust v. Commissioner*, 1 T.C. 899 (1943) (trustees specifically prohibited from operating a coal business); *Wyman Building Trust v. Commissioner*, 45 B.T.A. 155 (1941) (trust could only deal with one piece of property). Rather, the trustee's powers expressly go beyond those kinds of activities which are generally typified by the usual nonbusiness trust.[3] Accordingly, we hold that petitioner possessed an objective to carry on a business and divide the gains therefrom within the meaning of section 301.7701–2(a), Proced. & Admin. Regs.

### Associates

The second fundamental test is the presence of associates. Sec. 301.7701–2(a)(2), Proced. & Admin. Regs. "Associates" refers to those individuals who possess a beneficial interest in the entity. *Morrissey v. Commissioner, supra* at 356–357; *Crocker v. Malley*, 249 U.S. 223, 234 (1919). However, a group's status as beneficiaries of a trust, standing alone, does not resolve the question of whether those within the group are associated together in a common business enterprise. In *Morrissey v. Commissioner, supra* at 357, the Supreme Court suggested that associations generally require some concerted volitional activity on the part of those beneficially interested, noting that the beneficiaries of an ordinary trust "do not ordinarily, and as mere cestuis que

---

[3]The Commissioner has recently demonstrated the manner in which he would distinguish a trust classifiable as an association from a "fixed investment trust." Compare Rev. Rul. 78–371, 1978–2 C.B. 344, with Rev. Rul. 79–77, 1979–1 C.B. 448.

trustent, plan a common effort or enter into a combination for the conduct of a business enterprise."

The beneficiaries' role in creating a trust may provide an indication of a planned, common effort. Active participation in establishing the entity evinces a voluntary association for engaging in a joint endeavor. On the other hand, the lack of the current beneficiaries' role in the trust's creation does not mandate a finding that they are not "associates." See *Swanson v. Commissioner*, 296 U.S. 362 (1935); *Roberts-Solomon Trust Estate v. Commissioner*, 34 B.T.A. 723 (1936), affd. 89 F.2d 569 (5th Cir. 1937). The absence of Egan and Harvey's continuing interest in petitioner, qua beneficiaries, is not determinative of the issue, since classification as an association can nonetheless result—

> where those who become beneficially interested, either by joining in the plan at the outset, or by later participation according to the terms of the arrangement, seek to share the advantages of a union of their interests in the common enterprise. [*Morrissey v. Commissioner, supra* at 357.]

See also sec. 301.7701–4(b), Proced. & Admin. Regs. As to those cases where the beneficiaries have either not participated in the trust's creation, or affirmatively entered into the enterprise (e.g., by way of a purchase of their beneficial interests), some further voluntary activity may be necessary on their part to satisfy the "associates" requirement. See R. McGee, "Problems of the Unintentional Corporation: The Association Taxable as a Corporation," 29 N.Y.U. Tax Inst. 853, 863 (1971). Where nongrantor beneficiaries receive their beneficial interests gratuitously, without solicitation, it is doubtful that they can be considered associated together in a common enterprise in the absence of some further joint activity (or at least the potential therefor) vis-a-vis the trust.

It is in this context that the beneficiaries' relationship to the organized entity must be considered. Thus, the beneficiaries' influence over the trust's activities may militate in favor of a finding of associates. See *Hynes v. Commissioner*, 74 T.C. 1266, 1280 (1980) (sole beneficiary was similar to a 100-percent shareholder since he could control the trust profits to which he was entitled). The regulations under section 7701(a)(3) speak to this point:

> Generally speaking, an arrangement will be treated as a trust under the Internal Revenue Code if it can be shown that the purpose of the arrangement

is to vest in trustees responsibility for the protection and conservation of property for beneficiaries *who cannot share in the discharge of this responsibility and, therefore, are not associates in a joint enterprise for the conduct of business for profit.* [Sec. 301.7701–4(a), Proced. & Admin. Regs. Emphasis supplied.]

One commentator has made the following observation regarding the issue of whether beneficiaries constitute associates:

Thus, the characteristic of associates does not exist where the beneficiaries by taking no part in the creation of the trust are not voluntarily associated at the outset; the nature of their interests is such that no other persons can become voluntarily associated by acquiring their interests; and they have no participation in the conduct of the trust's affairs. But the characteristic of associates can exist even where the trust has not been created by the beneficiaries, if their interests are freely transferable and they have some voice in decisions as to amendments to the trust or its termination, though they have no voice in management. [M. Lyons, "Comments on the New Regulations on Associations," 16 Tax L. Rev. 441, 454–455 (1961).]

We believe that the above-mentioned factors, particularly the role of beneficiaries in a trust's creation and the extent of their participation in its affairs, provide a helpful framework for ascertaining whether a trust's beneficiaries should be deemed associates. In fact, this framework is suggested by various cases which have considered the issue.

In *Curt Teich Trust No. One v. Commissioner*, 25 T.C. 884 (1956), a husband and wife established a trust in order to create an estate for the benefit of their four children, which contained a spendthrift provision. Nine parcels of realty were transferred to the trustees to hold, manage, invest, and reinvest; collect the gross income and pay expenses; and distribute the balance to the designated beneficiaries. The trustees were given broad powers over the trust estate including power to sell, assign, or transfer any portion thereof, reinvest in other property and erect, repair, and reconstruct improvements. The trustees were expressly authorized to deal with the property as would be lawful for an owner in fee to do. This Court held that the trust was not taxable as an association because the beneficiaries did not associate themselves in any enterprise. Particular emphasis was placed on the grantors' desire to create an estate for their children which could not be dissipated by spendthrift operations, a desire which was effectuated by the restriction on the beneficiaries' interests against any anticipatory assignment thereof. In addition, the Court indicated that the grantors

entirely disassociated themselves from the trust property; that the beneficiaries had no previous interest in the property; and that the beneficiaries did not have any certificates or evidences of interest or participation which would make them associates in the operations of the trust. We held that—

Under the circumstances of this case it is our opinion that it cannot be said that the beneficiaries planned a common effort or entered into a combination for the conduct of a business enterprise. It is our view that these beneficiaries are not associates and that the trust should not be considered an association within the meaning of the statute and the regulations and the rule of the *Morrissey* case. * * * [*Curt Teich Trust No. One v. Commissioner, supra* at 891.]

In an earlier case, *Living Funded Trust of Harry E. Lyman v. Commissioner*, 36 B.T.A. 161 (1937), an individual established a trust to provide for the maintenance, welfare, and comfort of his wife, children, and grandchildren. The trustees were given broad authority to manage and deal with the trust property, including the power "to operate any business or interest in business comprised in this trust estate." The beneficiaries were precluded from selling, encumbering, or making any other anticipatory assignments of their interests. The trust did not provide for any stock certificates or certificates of beneficial interest. The Board of Tax Appeals held that the trust was not an association since it was not operated in essential respects in accordance with corporate forms of management. The Board stated that—

In the case under consideration the beneficiaries did not establish a trust for the management of properties owned by them as tenants in common. They did not associate themselves together for the prosecution of a common enterprise; they did not create an "association" upon the methods and forms used by corporations; they had no part in establishing the trust, and were without power to modify the trust agreement or to terminate the trust. * * * [*Living Funded Trust of Harry E. Lyman v. Commissioner, supra* at 166.]

We are cognizant that both of the cases quoted above, as well as the previously quoted comment by Lyons, stress the importance of any restrictions placed upon the beneficiaries' ability to transfer their interests. Consideration of this factor, in relation to an analysis of the beneficiaries' status as associates, would thus appear to overlap the provisions of section 301.7701–2(e), Proced. & Admin. Regs. (wherein free transferability is listed as one of the four other factors bearing on corporate resemblance). In any event, absence of free transferability, in addition to

hindering others from becoming voluntarily "associated" by acquiring the current beneficiaries' interests, bespeaks a form that is inconsistent with that of a quasi-corporate entity and accordingly suggests a nonassociation classification.

Turning to the circumstances of the instant case in light of the above-mentioned considerations, we note that the beneficiaries played no role in petitioner's creation. Egan and Harvey transferred the Elm Street property to petitioner and were the original beneficiaries, but they soon thereafter assigned their interests pursuant to article Sixth of the declaration of trust. It also appears that the subsequent beneficiaries received their interests gratuitously.[4] We think it can be safely said that the individuals who were petitioner's beneficiaries during the years in issue played no active role either in the creation of petitioner or upon their subsequent entrance into a beneficial relationship with the trust.[5]

The interests of the beneficiaries in the trust were transferable only under certain restrictive provisions contained in article Sixth. That article generally prohibited a transfer of the beneficiaries' interests with the exception of testamentary transfers pursuant to the will of a beneficiary and transfers assented to by the trustee and all of the other beneficiaries. The requirement that all other beneficiaries agree to any transfer of a beneficial interest imposes a substantial limitation on free transferability (sec. 301.7701–2(e)(1), Proced. & Admin. Regs.), and thus significantly hinders the ability of the beneficiaries to voluntarily and unilaterally substitute others for themselves as associates.

The beneficiaries' other powers under the trust instrument included the authority to appoint a successor trustee in the event of the trustee's death, inability to serve, or resignation; amend or modify the trust instrument if acknowledged in writing by the trustee and all of the other beneficiaries; and terminate the

---

[4]This fact can be reasonably inferred from the lack of consideration referred to in the assignment documents as well as the estate planning purpose which Egan and Harvey stated as being one of the main reasons they chose a trust form of ownership.

[5]For example, beneficiaries' purchase of beneficial interests would tend to indicate the presence of associates, since the purchase signifies a voluntary and affirmative entrance into the enterprise. See *Second Carey Trust v. Helvering*, 126 F.2d 526 (D.C. Cir. 1942), cert. denied 317 U.S. 642 (1942).

trust prior to the expiration of the stated 11-year period if all of the beneficiaries notified the trustee in writing, or if any 25-percent (or greater) interest holder notified the trustee, subject to the trustee's absolute discretion to refuse to terminate the trust.

In our view, the ability of the beneficiaries to influence or otherwise participate in the trust's activities is limited in scope by virtue of the conditions attached to the exercise of the relevant powers—either concurrence by all of the beneficiaries or concurrence of the trustee in addition. Although petitioner possessed a business objective, the evidence concerning the trust's creation and its subsequent operations does not indicate that the beneficiaries affirmatively planned or entered into a joint effort for the conduct of a common enterprise. Similarly, the nature of the beneficiaries' interests, including the powers incident thereto, does not suggest that they could effect an unfettered, significant influence on petitioner. We thus conclude that petitioner's form did not afford a medium by which the beneficiaries could conduct income-producing activities through a quasi-corporate entity. The beneficiaries were not associates for purposes of section 7701(a)(3) and the regulations thereunder.

Accordingly, since petitioner does not possess the fundamental prerequisite of associates, it is not classifiable as an association within the meaning of section 7701(a)(3).

*Decision will be entered for the petitioner.*