ESTATE OF HARRY M. BEDELL, SR., TRUST, HELEN BEDELL STAMER AND HARRY M. BEDELL, JR., TRUSTEES, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 21381-84, 21382-84.          Filed June 18, 1986.

*K. Martin Worthy, William H. Bradford, Jr.*, and *Gregory K. Oyler*, for the petitioners.
*Mark A. Kuller*, for the respondent.

RAUM, *Judge*: The Commissioner determined deficiencies in petitioners' income tax in the following amounts:

| Docket No. | Petitioner | 1980 | 1981 |
| --- | --- | --- | --- |
| 21381-84 | Harry M. Bedell, Jr. | - - - | $810.00 |
| 21382-84 | Bedell Trust | $17,857.73 | 15,021.48 |

The issue presented for decision is whether the Estate of Harry M. Bedell, Sr., Trust (the trust or the Bedell Trust)[1] is properly taxable as a trust, or classified as an association

---

[1]We refer to the Estate of Harry M. Bedell, Sr., Trust, as a trust for convenience only and not to indicate our conclusion as to that entity's character for Federal tax purposes.

taxable as a corporation.[2] The resolution of this one issue will dictate the proper tax treatment to the trust of income earned by it and distributions to beneficiaries made by it in 1980 and 1981. It will also determine whether cash distributions received by Harry M. Bedell, Jr., from the trust in 1981 are taxable as dividends or whether he is to be charged with his share of the trust's income for that year. Additionally, it will determine whether the trust or Harry Bedell, Jr., is entitled to an investment tax credit.

## FINDINGS OF FACT

Some of the facts have been stipulated. The stipulation of facts and related exhibits are incorporated herein by this reference.

The decedent, Harry M. Bedell, Sr., died February 9, 1964, in Washington, D.C., at the age of 83. At the time of his death he was a resident of Washington, D.C., and his will was admitted to probate there. The executors named in his will, who were also appointed trustees of the Bedell Trust (established pursuant to his will), were his three children: Harry M. Bedell, Jr., Helen Bedell Stamer, and Beverly Bedell Shone. At the time the petitions herein were filed, Harry Bedell, Jr., resided in Maryland, Helen Bedell Stamer resided in Virginia, and the trust address was in Virginia. Beverly Bedell Shone was by then deceased, and had not been replaced by another trustee.

At the turn of the century, Harry M. Bedell, Sr., moved from New York to Washington, D.C., with his parents. Sometime in 1923 he purchased a large home in Washington, D.C., at 1620 Massachusetts Avenue, N.W. (the Massachusetts Avenue residence).

In 1919, the decedent took over his father's bedding manufacturing and retailing business located at 610 E Street, N.W., in Washington, D.C. In the 1920's, at his father's death, the decedent combined that bedding business with his father's decorator supply business and operated them both as a sole proprietorship known as the Bedell Manufacturing Co. (the company), at his E Street location.

---

[2]In the event the trust is not found to be taxable as a trust, petitioners argue alternatively that it is to be treated as a partnership. In view of the conclusion reached by us on the principal issue, we do not find it necessary to consider this point.

At some point the company's business premises expanded to include 608 E Street.

In 1946, Harry M. Bedell, Sr., hired his son-in-law, Paul F. Stamer to work for the company. Over the years from 1946 until his death in 1964, the decedent turned over increasing responsibility for the operation of the company to his son-in-law. His son, Harry Bedell, Jr., was also employed by the company, but only for what appears to have been a short time in the late 1950's and early 1960's. Neither of his daughters was ever so employed. During the tax years, some 11 to 13 persons were employed by the company.

Harry M. Bedell, Sr., without the benefit of legal counsel, and without consulting with his family, devised his own estate plan which was in 1962 reduced to the form of a will. The will was an extraordinary document; although it reflected some evidence of legal assistance, it was in many respects crudely drawn, and revealed highly individualistic traits of the decedent, a man who was accustomed to being the master of his household and family. In that will, he made bequests of his personal effects to his wife Laurel Bedell and his son Harry M. Bedell, Jr., and devised a "lifetime estate" in the family home at 1620 Massachusetts Avenue to his wife. He then created the Harry M. Bedell, Sr., Trust with the conveyance of his residuary estate to his "wife and children, in trust".

This residuary estate, which constituted the original res of the trust, included at least the following assets: the remainder interest (after a life estate to his wife) in the family home at 1620 Massachusetts Avenue, a summer home in Chesapeake Beach, Maryland (the Chesapeake Beach house), a filling station in Mt. Rainier, Maryland (the Mt. Rainier property), and the assets of the Bedell Manufacturing Co.

Notwithstanding that the decedent, as noted above, had provided for the conveyance of the residuary estate to his wife and children in trust, he then named as trustees only his three children, Helen Bedell Stamer, Beverly Bedell Shone, and Harry M. Bedell, Jr. He directed that the trustees continue to operate the company "indefinitely or so long as [the trustees] and/or their successors find it advis-

able and profitable to do so". He also charged them with the following duties: "The Trustees shall hold, and manage the property as a Trust Fund; invest and reinvest the same".

The decedent further instructed the trustees to expend funds and distribute net income[3] in the following manner. He specified that salaries to his son and sons-in-law who devoted their full time and attention to the company would be an operating cost of the company. Further, he directed that after necessary working capital was set aside one-third of the net annual income should be distributed to his wife, Laurel Bedell. However, provision was also made to the effect that such amount might be greater or that principal might even be invaded for her benefit in specified circumstances. Thus, the will provided that if she should prefer to reside in an apartment rather than in the large Massachusetts Avenue home, she might rent an apartment for up to $1,800 a year,[4] and if her one-third share of the income of the trust were insufficient to provide her with funds for such rent and for a $100 monthly drawing account, then she should receive a larger share or a distribution from principal. Further, "upon [her] written request," the trustees could in their discretion withdraw principal from the trust and pay it over to their mother for her "maintenance, comfort and general welfare". In the event that the company showed no profit for a year, the trustees were instructed to "pay Laurel Bedell any amounts that in their judgment shall be necessary for her comfort and care". Any balance after Laurel Bedell was provided for was to be divided among the three children of decedent and Laurel Bedell. On the death of such a child, the surviving issue of that child would share that child's interest. Principal could not be distributed to a grandchild until he or she had reached the age of 21. Finally, the decedent provided that

---

[3]Throughout the will, when the decedent referred to "income" he failed to distinguish clearly between the income of the company and that of the trust. We construe the term to mean income of the entire trust.

[4]Notwithstanding the earlier provision in the will giving a "lifetime estate" in the Massachusetts Avenue property to the wife, it was provided later in the will that if during the occupancy of the property any part or all of it should be leased, the trustees were to include the income therefrom as part of the distributable trust funds. The will also provided for the wife's use of the Chesapeake Beach house which the trustees were authorized to sell if she should desire to discontinue living there. In the latter event, it was further stated that some other residence must be provided for her "nominally" as a Maryland residence.

the "Estate may be divided, * * * but not before [the] youngest living grandchild reaches the age of twenty-one years" at which time "the rest and residue of the Trust shall be conveyed to [the] grandchildren, share and share alike".

The decedent further directed that "if any child or grandchild of mine of the whole blood should unfortunately contract Polio, Muscular Dystrophy, or any crippling disease and is unable financially to bear the expense, then and in that event, the entire estate shall be charged with the expense of treatment". His concern in this respect was attributable to the fact that he had had two brothers who were stricken with a disabling disease and whose assets were presumably largely depleted as a consequence.

While the decedent provided detailed instruction to the trustees with respect to distributions of income and principal, he gave them "exclusive power to determine whether or not money or property coming into their possession shall be treated as principal or income, according as they may deem just and equitable". He also directed that distributions be made out of income net of the level of working capital the trustees and the company accountant determined to be required by the company.

The decedent's will contained no provisions specifically governing the transferability of interests by beneficiaries, the extent of liability on the part of beneficiaries, or the effect of a death of a beneficiary on the continued life of the entity. However, the testator's emphatic efforts in various parts of the will to make sure that the benefits of the estate were to inure only to his blood descendants (and not even to legally adopted grandchildren or to a daughter-in-law) strongly suggest an intention that the beneficial interests therein were to remain within the family. The two trustees who were alive at the time of trial of this case understood their father's intention to be that the beneficial interests were not to be assigned, and would resist any effort by any beneficiary to attempt an assignment.

The decedent's purpose in creating the trust was to set up a mechanism for distribution of his estate that would benefit and satisfy his wife and family. Specifically, he hoped the trust would provide for the comfort and care of

his wife, provide income to his children and grandchildren, and bear the expense of any crippling disease contracted by a child or grandchild if that child or grandchild could not bear such expense. He died February 9, 1964, and his will was admitted to probate in the District of Columbia on or about May 14, 1964. Ancillary probate proceedings took place in Maryland.

Since Harry M. Bedell, Sr.'s death, Paul Stamer has managed the trust property under the direction of the trustees. This position has required the renting of the Massachusetts Avenue residence for about 2 years after Laurel Bedell moved from it, the collection of rent from and billing of taxes to the lessee of the Mt. Rainier property until about 1973, the management of the daily functions of the Bedell Manufacturing Co., and the renting out of the trust's excess office and warehouse space.

In the administration of the trust, the trustees would meet only informally, as at dinner, to discuss or decide matters relating to the trust. No votes were ever taken; there was generally an informal consensus. No minutes were kept. There were no bylaws; unlike a corporation, there was no seal; and no certificates of beneficial interest were ever issued, or even contemplated. The trustees were motivated mainly by the objective of carrying out their father's wishes. Other than as "trustees", no one connected with the trust had an office or title such as president, secretary, treasurer, or the like.

The trust's financial history, as revealed by financial statements of the Bedell Manufacturing Co. and tax returns of the trust, shows income from the following sources: the operations of the Bedell Manufacturing Co., the rental of trust property, and the sale of other trust assets. In the years at issue, 1980 and 1981, net rental income constituted approximately 33 percent and 48 percent, respectively, of total net income.

In 1974, the trustees exchanged the trust property and improvements at 608-610 E Street for property in the Lehigh Industrial Park at 2704 Dorr Avenue in Merrifield, Virginia. That Virginia property consisted of two adjacent lots of about an acre apiece, one unimproved and one improved by a building containing both warehouse and office space. When the company moved into its new business premises, it no longer operated as a retail outlet

but limited itself primarily to sales to wholesale customers. At about that same time, the company began reducing its bedding manufacturing operations.

Since the move, the company has used only the improved lot and only a portion of the warehouse space in the building on that lot. That warehouse space was greatly in excess of its needs. The trustees do not intend to have the company expand into the extra warehouse space or the contiguous unimproved lot. The Virginia property was acquired at least in substantial part because of the prospect of enhancement in value for the benefit of the trust. It has in fact increased considerably in value, and the trustees are holding the land for future sale at a further appreciated price for the benefit of the grandchildren-remaindermen. The evidence strongly suggests that future enhancement in value is likely, and that the profit to be derived from disposition of such property may reasonably be expected to be of a far greater order of magnitude than any income derived from the conduct of the company's business.

Between decedent's death and the time of trial, the trust had disposed of all its major assets except the business premises of the company and the valuable real estate. Sales of assets are recorded as sources of income in the trust's records in 1969, 1970, 1971, and 1973.

Each year the current income beneficiaries of the trust have paid taxes on their full share of trust income. Those shares of income were determined by reference to decedent's will, not in accordance with capital contributions. Until her death in 1973, Laurel Bedell received distributions from the trust each year, receiving distributions totaling less than her share of the year's profits in some years, more than her share in other years (1969, 1972, and 1973), and dipping into the trust principal in 1973.

The other income beneficiaries have taken distributions from the trust when available and "as the need arose". When a beneficiary left a portion of his share of funds undrawn in the trust, that amount would be used by the company as working capital. The beneficiary's balance of undrawn funds would accumulate from year to year and interest would be earned on it. Before her death in 1983 Beverly Shone, who was suffering with cancer, withdrew

from the trust more than her accumulated share of income and interest. She did not pay the trust interest on the principal she withdrew. Since Beverly Shone's death, her three children have shared her one-third interest in the trust income, drawing on the cash due them.

In 1980 and 1981, the Harry M. Bedell Trust filed Form 1041 "U.S. Fiduciary Income Tax Return", reporting both as taxable income and as an income distribution deduction the profits from the operations of the Bedell Manufacturing Co. and the rental of the trust's excess warehouse space, figures taken from the "Bedell Manufacturing Company Statement of Operations" for those years. The Commissioner, in his notice of deficiency, increased the trust's taxable income by the full amount of its income with no deduction for the distribution, stating that "It has been determined that the entity known as the Bedell Manufacturing Company, administered by the Estate of Henry [sic] M. Bedell, functions as an association. * * * Accordingly, the entity is considered a corporation which is to be taxed on its net income. Such net income may not be reduced by income distribution deductions". The Commissioner had not previously challenged the classification of the Bedell Trust as a trust for any of the years prior to 1980.

In 1981, Harry M. Bedell, Jr., reported on his Schedule E $23,079 as his share of the trust income for the year. He included in his interest income $1,620 of interest earned in 1981 on his undrawn, accumulated portion of trust income. The figures on the return were rounded to the nearest dollar. The Commissioner, in his notice of deficiency, determined that Harry M. Bedell, Jr., owed taxes on $24,379.64 of dividend income—his $26,000 cash distribution from the trust less the $1,620.36 of that distribution attributable to accrued and previously undrawn interest income, instead of his $23,079.42 share of trust income because "the Bedell Manufacturing Company as administered by the Estate of Harry M. Bedell was operating as a corporation during 1981".

## OPINION

The principal matter before us is the determination of which side of the shadowy line of separation between trusts

and associations the Bedell Trust falls. The starting point for considering whether any particular organization or entity qualifies as an "association" taxable as a corporation is *Morrissey v. Commissioner*, 296 U.S. 344 (1935). The Supreme Court granted certiorari in *Morrissey* (and three companion cases)[5] for the obvious purpose of establishing authoritative guidelines in a field which was then regarded as "seemingly in a hopeless state of confusion", and in which there was a widespread conflict of decisions in the lower courts. 296 U.S. at 347. To be sure, the Court recognized that it was not feasible to draw a hard and fast line between "associations" and other entities like trusts and partnerships. It noted that (p. 356) "it is impossible in the nature of things to translate the statutory concept of 'association' into a particularity of detail that would fix the status of every sort of enterprise or organization which ingenuity may create". It nevertheless proceeded to establish a degree of consistency in this field and give guidance in the attempt to classify a particular entity.

The Court noted that (p. 357) "The inclusion of associations with corporations implies resemblance * * * and not identity", and it set forth six significant criteria or attributes to be taken into account in the process of determining the status of a given entity. These consisted of (i) Associates, (ii) an objective to carry on business and divide the gains therefrom, (iii) continuity of life, (iv) centralization of management, (v) liability for corporate debts limited to corporate property, and (vi) free transferability of beneficial interests. The Court stated that (p. 360) "these attributes make the trust sufficiently analogous to corporate organization to justify the conclusion that Congress intended that the income of the enterprise should be taxed in the same manner as that of corporations". Moreover, apart from the foregoing six criteria, the Court recognized that "the use of corporate forms may furnish persuasive evidence of the existence of an association", but it added that "the absence of particular forms, or of the usual terminology of corporations, cannot be regarded as decisive". (296 U.S. at 358.)

---

[5]*Swanson v. Commissioner*, 296 U.S. 362 (1935); *Helvering v. Combs*, 296 U.S. 365 (1935); *Helvering v. Coleman-Gilbert*, 296 U.S. 369 (1935).

The opinion in *Morrissey* also pointed out with approval that the Treasury Department had authority within permissible bounds of administrative construction to promulgate regulations or supply rules for the "enforcement" of the statute. 296 U.S. at 354-355. The statute in question in *Morrissey* and as subsequently reenacted and now in effect is section 7701(a)(3) of the Code which defines the term "corporation" to include "associations". It was in the exercise of the authority recognized by the Supreme Court that the Treasury promulgated the present regulations modifying and expanding upon prior regulations. The new regulations, as amended, are currently to be found in sections 301.7701-1 through 301.7701-4, Proced. & Admin. Regs. The six tests outlined in *Morrissey* were incorporated in the new regulations, which further provided that "other factors may be found in some cases which may be significant in classifying an organization" and that the classification of an entity will depend on whether the "organization more nearly resembles a corporation than a partnership or trust. See *Morrissey et al v. Commissioner* (1935) 296 U.S. 344". Sec. 301.7701-2(a)(1), Proced. & Admin. Regs.

In respect of both trusts and partnerships the regulations contain the following significant provisions (sec. 301.7701-2(a)(2) and (3)):

(2) * * * Some of the major characteristics of a corporation are common to trusts and corporations, and others are common to partnerships and corporations. *Characteristics common to trusts and corporations are not material in attempting to distinguish between a trust and an association,* and characteristics common to partnerships and corporations are not material in attempting to distinguish between an association and a partnership. For example, since centralization of management, continuity of life, free transferability of interests, and limited liability are generally common to trusts and corporations, *the determination of whether a trust which has such characteristics is to be treated for tax purposes as a trust or as an association depends on whether there are associates and an objective to carry on business and divide the gains therefrom.* On the other hand, since associates and an objective to carry on business and divide the gains therefrom are generally common to both corporations and partnerships, *the determination of whether an organization which has such characteristics is to be treated for tax purposes as a partnership or as an association depends on whether there exists centralization of management, continuity of life, free transferability of interests, and limited liability.*

(3) An unincorporated *organization shall not be classified as an association unless such organization has more corporate characteristics than noncorporate characteristics.* In determining whether an organization has more corporate characteristics than noncorporate characteristics, *all characteristics common to both types of organizations shall not be considered.* * * *

[Emphasis supplied.]

Central to the application of these provisions is the final clause quoted above to the effect that all characteristics common to corporations and trusts or partnerships "shall *not* be considered". (Emphasis supplied.) Thus, the regulations provide that since four of the six criteria are generally characteristic of both trusts and associations, the determinative test depends upon only the two remaining criteria, namely, whether there are "associates *and* an objective to carry on business and divide the gains therefrom". (Emphasis supplied.) Similarly, where the problem is one of distinguishing between partnerships and associations, the regulations state that, after eliminating two of the criteria applicable generally to partnerships and corporations (associates and business purpose), the determinative test depends on the four remaining criteria.

The governing methodology in dealing with these regulations was established by this Court in *Larson v. Commissioner*, 66 T.C. 159 (1976). That case involved the provisions relating to distinguishing between partnerships and associations. The Court held that under the regulations, an entity could not be classified as an association (as opposed to a partnership) unless it had more than half (i.e., more than two) of the four attributes specified in the regulations in respect of partnerships, assuming that there were no "other factors" in addition to the original six that might be significant. Furthermore, the Court applied a purely mechanical test in which each of the individual four factors were to be given equal weight, and in which it was simply necessary to count the critical factors to see whether they came to at least three. Thus, an entity might fail to be classified as an association rather than a partnership even though considering all four significant attributes as a group under a more flexible approach giving each attribute a

different level of significance in the context of the particular case, one might arrive at an opposite conclusion.[6]

In our judgment, this Court's literal reading of the regulations in respect of partnership v. association is equally applicable in the case of trust v. association, dealt with in the same provisions of the regulations. In the case of classifying an entity as an association rather than a trust, the regulations provide that the result depends merely upon the two (not six) critical criteria relating to trusts, i.e., "whether there are associates *and* an objective to carry on business and divide the gains therefrom". (Emphasis supplied.) In short, applying the regulations literally, as was done in *Larson*, the Bedell Trust cannot be classified as an association unless it satisfies both the associates and the business tests. Not only do the regulations refer to both attributes in the conjunctive, but they also specifically require that, after eliminating "all characteristics common to both types of organizations", an organization "shall not be classified as an association unless [it] * * * has *more* corporate characteristics than noncorporate characteristics". (Emphasis supplied.) Sec. 301.7701-2(a)(3), Proced. & Admin. Regs. Thus, in accordance with the latter requirement, since the trust must have "more" than half of the two determinative characteristics to qualify as an "association" rather than a trust, it must fail to qualify as such if it satisfies only one of the tests. So much is plainly called for by the methodology employed in *Larson* that was approved by a majority of the Court.

Turning to the case before us, we must conclude that the Bedell Trust is not an association since we find that it does not have "associates". Failure to satisfy the "associates" test is itself sufficient to prevent it from being classified as an association. Such failure alone was held to be decisive in *Elm Street Realty Trust v. Commissioner*, 76 T.C. 803 (1981), wholly apart from whether the entity may have also satisfied the conduct of a business test. The same result is called for here, since we find that there was similarly an absence of associates in respect of the Bedell Trust.

---

[6]This more flexible approach on the record before us would not result in an opposite conclusion in this case but would even further support the conclusion that we reach hereinafter in this opinion.

In considering whether there were associates, it is pertinent to examine the basic nature of the Bedell Trust. The trust was established pursuant to the Will of Harry M. Bedell, Sr., which undertook to set forth the testator's complete estate plan. After making some specific bequests of certain tangible personal property to his wife and son, the testator provided for the transfer of his entire remaining assets, the bulk of his estate, to the testamentary trust before us. Those assets included his large home in Washington, a summer home in Maryland, certain commercial real estate in Maryland, his sole proprietorship (the Bedell Manufacturing Co.), and all other remaining assets owned by him.[7] The will is an extraordinary document, drafted by the testator himself with what appears to have been only a minimal amount of professional legal assistance. The testator's image as disclosed by the will is that of a strong-willed person accustomed to being the dominant figure in his family and having his own way, who was emphatic upon seeing to it that only his blood descendants should benefit from his estate. It is in the context of this will that we must determine whether the Bedell Trust fails to qualify as an association by reason of the absence of "associates". We note preliminarily that its status as a trust has never been challenged by the IRS since its creation in 1964, until the Commissioner's determination in respect of the years 1980 and 1981, the years before us now.

We find that the trust under consideration lacks associates and is thereby not classifiable as an association. The beneficiaries here have not "plan[ned] a common effort or enter[ed] into a combination for the conduct of a business enterprise". *Morrissey v. Commissioner*, 296 U.S. 344, 357

---

[7] We are aware that most of the assets apart from the Bedell Manufacturing Co. had been disposed of prior to the years in issue, 1980 and 1981. On the other hand, it is clear on this record that the highly valuable land owned by the trust during the tax year was being held for appreciation, particularly for the benefit of the remaindermen—an objective wholly apart from that of conducting the business of the company. Moreover, even as to that portion of the land occupied by the company, the facilities therein were far in excess of its needs and such excess facilities were being held by the trust simply for profitable leasing so as to augment the amount of distributable current income payable to the lifetime beneficiaries. To be sure, the company was certainly engaged in conducting a business, but whether that was enough to conclude that it outweighed the nonbusiness aspects of the trust so as to satisfy the business test under the regulations is a matter that we need not decide. For, even if the business test be regarded as satisfied—and a strong case can be made out that it is—decision must nevertheless go against the Government in view of our conclusion that the associates test has not been satisfied.

(1935). Additionally, they did not affirmatively enter into the enterprise by way of a purchase of their beneficial interests. *Elm Street Realty Trust v. Commissioner*, 76 T.C. at 814.

Further, a relevant factor to be taken into account is that it was the decedent's "desire to create an estate for [his] * * * children [and grandchildren] which could not be dissipated by spendthrift operations, a desire which was effectuated by the restriction on the beneficiaries' interests against any anticipatory assignment thereof". *Elm Street Realty Trust v. Commissioner, supra*, 76 T.C. at 815. To be sure, there were no specific provisions against assignment in the decedent's will, but his desire that the beneficial interests in the trust remain within the family comes through loud and clear.

The beneficiaries' interests were too personal to be freely transferable. It was Mr. Bedell's clear intention that the trust income be used only to benefit children and grandchildren of the whole blood—an intention that, in our judgment, would be given effect by any local court construing the will. Only one of those so limited descendants can look to trust funds in case he contracts a "crippling disease and is unable financially to bear the expense". Since a beneficiary cannot confer upon a substitute "all the attributes of his interest" in the trust, such interest is not transferable. *Foster v. Commissioner*, 80 T.C. 34, 190 (1983), affd. on this issue 756 F.2d 1430 (9th Cir. 1985). Sec. 301.7701-2(e)(1), Proced. & Admin. Regs. This non-transferability of interests militates against a finding of associates. *Elm Street Realty Trust v. Commissioner, supra* at 815. See *Curt Teich Trust No. One v. Commissioner*, 25 T.C. 884 (1956); *Living Funded Trust of Harry E. Lyman v. Commissioner*, 36 B.T.A. 161 (1937). We cannot find, where one person has created an entity, unilaterally distributed interests in it to others, and then restricted their ability to transfer their interests, that there exists "a voluntary association of individuals for convenience and profit", which characteristic is the very essence of an association. *Blair v. Wilson Syndicate Trust*, 39 F.2d 43, 46 (5th Cir. 1930).

Further, the beneficiaries did not, qua beneficiaries, control trust affairs. Only 3 of the original 10 beneficiaries

(wife, 3 children, 6 grandchildren)[8] participated in trust affairs as trustees in the years at issue. These trustees, to a large extent, are responsible for the "protection and conservation of property for beneficiaries who cannot share in the discharge of this responsibility", those beneficiaries being the wife and grandchildren. Sec. 301.7701-4(a), Proced. & Admin. Regs. Participation in trust management by so few beneficiaries does not transform all the beneficiaries into associates and the trust into an association. See *United States v. Davidson*, 115 F.2d 799, 800, 801 (6th Cir. 1940); *Curt Teich Trust No. One v. Commissioner*, 25 T.C. at 892; *Living Funded Trust of Harry E. Lyman v. Commissioner*, 36 B.T.A. at 166, 168. This conclusion is particularly clear where the non-participating beneficiaries have no right to appoint or control those beneficiaries who do act as trustees.

What we have here is a unique family estate plan, involving a trust characterized by a dominant familial objective. We conclude that the beneficiaries, who neither created nor contributed to the trust, whose interests in the trust are not transferable, and only a few of whom participate in the trust affairs, are not associates and their trust is not an association.[9]

---

[8] Indeed, the number of grandchildren could be even greater in the event of the birth of any additional grandchildren after the decedent's death. The record in fact discloses certain changes in the composition of the group of grandchildren after the decedent's death, and does not rule out even further possible changes in the future.

[9] The Government seeks to preclude any such analysis by reliance upon sec. 301.7701-4(b), Proced. & Admin. Regs. It contends that pursuant to the provisions of sec. 301.7701-4(b), a trust which operates a business is not simply an arrangement "to protect or conserve the property for the beneficiaries", and therefore cannot be classified as a trust for tax purposes. While it is true that the regulation is entitled "Business trusts" and that it states that trusts which do not "simply * * * protect or conserve the property for the beneficiaries * * * are not classified as trusts for the purposes of the Internal Revenue Code," we are not convinced that the running of a business enterprise is necessarily inconsistent with the protecting and conserving of trust property. The regulation merely notes that trusts which do not qualify for trust classification under its terms *"generally* are * * * device[s] to carry on a profit-making business." (Emphasis supplied). We do not accept a view of this regulation which is as overly broad as that suggested by respondent when the regulation itself is ambiguous and when to do so would both nullify the "associates" requirement found in sec. 301.7701-2(a)(2), and place the "Business trusts" regulation in direct conflict with the results required by the principles extensively set forth in sec. 301.7701-2 and 3, principles which are explicitly recognized in the regulations at sec. 301.7701-4(b). Moreover, if such nullification were intended, it should have been more clearly set forth, and it is still within the authority of the Treasury to amend the regulations for that purpose. Cf. *Larson v. Commissioner*, 66 T.C. 159, 185-186, particularly n. 24 (1976).

A final note. We wish to emphasize that the result reached herein is based upon this record, and that the case should not be regarded as authority for the conclusion that no testamentary trust can be classified as an association. Nor do we consider any particular element relating to the trust herein as determinative. The result rests upon all the facts taken in the aggregate. We understand that the Government regarded this case as a test case in respect of testamentary trusts and trusts engaged in the conduct of a business, and that high levels in the IRS were active in pressing the matter. It is difficult to imagine a more unsuitable vehicle than this case for any such purpose, and we think it regrettable that extensive misguided efforts were exerted to such a fruitless end in this litigation.

*Decision will be entered under Rule 155.*